**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT** | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| **THE GREATER HATBORO CHAMBER** | | NO. 02 -cv-4421 |
| **OF COMMERCE, INC.; JOHN J.(BUD)** | : | |
| **AIKEN, AND MICKEY GLANTZ** | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF OPPOSING**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

I. INTRODUCTION

Plaintiff worked ten years for an employer with less than four workers, below the jurisdictional threshold for filing sexual harassment and discrimination claims under the PHRA. She suffered verbal and physical abuse from Aiken and Glantz for years, attempted to stop it without success, and finally screamed and threw Aiken out of her office when he indecently exposed himself during business hours.

Then Aiken then came up with a "reorganization" plan[1] to put Plaintiff out.  The chamber offered her part time work at half pay.  Aiken took over as executive director.  With this fact pattern, defense counsel  had to invent  new law or twist existing law, to oppose the Complaint. Invention is not for the courtroom. Defendants think they are above the law.  If employers could escape liability for sexual assault and harassment by employing less than four people, there would be no corporations employing more than 3 people, Pennsylvania voters would have adopted a null and void ERA, and PHRC  would have very little to do.

---

[1] If it is possible that a one-person staff could be "reorganized."  This is a transparent pretext. Its only purpose was to force Plaintiff out.

The idea that state legislators, in creating the PHRC and an administrative process for discrimination claims against employers of four or more workers in 1955, could preempt and nullify a Constitutional ERA adopted in 1971, allowing small companies freedom to abuse and mistreat women workers without liability offends all Constitutional concepts.   And all women.

II. ARGUMENT

> A. COUNT I OF COMPLAINT STATES A VALID CLAIM UNDER  THE PENNSYLVANIA  EQUAL RIGHTS AMENDMENT, ARTICLE I § 28.

Imboden v. Chowns Communications Inc.,  182 F. Supp. 2d 453 (E. D. Pa. 2002) considered and rejected the issues raised by defendants' motion. It controls this case because the defense in Imboden relied upon the very same cases the Hatboro Chamber relies upon here. The Court in a well reasoned opinion rejected the precise arguments defendants restate.  Judge Kauffman understood there is no requirement of State state action for filing a claim under the PERA, and held the PHRA cannot preempt Constitutional claims under the PERA.

Linda Imboden sued her employer for negligent and intentional infliction of emotional distress and for violating the Pennsylvania Equal Rights Amendment (PERA), Article I § 28. The Court found that common law claims for negligent and intentional infliction of emotional distress are barred by Pennsylvania's Workers' Compensation Act, 77 Pa. C.S. § 1 et. seq., but held that while the PHRA, 43 Pa. C.S. § 955(a) et. seq. preempted common law remedies for discrimination, it **did not preempt the employee's state constitutional claims pursuant to the Pennsylvania ERA.**  Defendant's motion to dismiss the PERA claim was denied.

Linda Imboden worked for a large company, and could also assert her claims under Title VII and the PHRA.  The  Imboden motion to dismiss did not include these statutory claims of sexual harassment.  But Dolores Barrett has no remedy under Title VII, which has a jurisdictional threshold of 15 employees.  Nor has she any remedy under the PHRA, with

jurisdiction only for claims against employers of four or more people. Defendants seek to convince this Honorable Court that Dolores Barrett simply has no rights.[2]

In Imboden , defendant argued that Plaintiff's PERA claim should be dismissed because it is preempted by the PHRA and because there is no allegation of state action in the Complaint. Initially, **the Court noted the PERA contains no state action requirement,** citing Bartholomew v. Foster, 541 A. 2d 393, 396 (Pa. Commw. Ct. 1988), *aff'd* 563 A. 2d 1390 (Pa. 1989); Welsch v. Aetna Ins. Co., 494 A. 2d 409, 412 (Pa. Super. Ct. 1985).  Accordingly, Judge Kauffman found defendant's argument that Plaintiff's PERA claim fails for this reason is without merit.  Further, the Imboden defendant, like the defendants in this case, relied upon Harker v. Juniata Coll., 51 Fair Empl. Prac. Cas. (BNA) 351, No. 99-0206, 1989 WL 297959 (Pa. Ct. Com. Pl. Oct. 17, 1989), which "is apparently based on an erroneous interpretation of Pennsylvania precedent," Judge Kauffman wrote.

The PHRA does not address preclusion of claims under the PERA.  See McCormack v. Bennigan's, 1993 U.S. Dist. LEXIS 10424, Civ. A. No. 93-1603, 1993 WL 293895 (E. D. Pa. July 30, 1993).  Indeed, the PERA was not enacted until 1971, sixteen years after the version of § 962(b) containing the preclusion language was passed. Cf. McNasby v. Crown Cork & Seal Co., 888 F. 2d 270, 281 (3d Cir. 1989) holding that the PHRA did not preempt claims under Title VII because, among other reasons, the PHRA "preceded the enactment of Title VII and the explosion

---

[2] Defendants state at page 1 of their brief that plaintiff filed a prior suit in state court.  The state court judge dismissed her ERA claim without opinion, in an interlocutory (and incorrect) decision.  That suit was withdrawn without prejudice.  This suit was timely filed here under diversity jurisdiction, which did not exist when the state court action was filed in April 2001. Defendants filed preliminary objections virtually identical to this motion to dismiss, in June 2001.  The state court judge cancelled oral argument in October 2001, then allowed the case to languish for an entire year without action, and finally made an incorrect ruling, dismissing the ERA claim without opinion, at the end of May 2002.  This shocking result could not be corrected without appeal.  The state court action included a defamation claim which is not in this case. Defendants' defamatory statements forced Plaintiff to move to New Jersey to find a job comparable to the one she held in Pennsylvania.  Defendants created the basis for diversity jurisdiction, and now complain that plaintiff is mitigating her damages and utilizing diversity jurisdiction.  It is true plaintiff believes she may have a more favorable outcome here, because the state court judge was incorrect.  Article III jurisdiction was created to provide an objective, unbiased forum for disputes between citizens of different states.

of federal antidiscrimination legislation by a number of years. . .in light of the chronology, it is impossible to conclude that the Pennsylvania legislature that adopted § 962(b) did so to preclude actions based on federal laws [and a State Constitutional Amendment] that did not yet exist." The court in McCormack reached the same conclusion.  The only decision to the contrary appears to be Harker, discussed above, which states the PHRA preempts all other remedies for discrimination.  But the PHRA does not preempt claims under Title VII, a subsequently enacted federal law.  McNasby, 888 F. 2d at 281.  Similarly, there is no reason why it should preempt the PERA, a subsequently adopted state constitutional provision approved by the electorate.

Defendants rely on the Pennsylvania Supreme Court decision in <u>Hartford Acc.and Indemnity Co. v. Insurance Commissioner of Pennsylvania,</u> 505 Pa. 571, 482 A. 2s 542 (1984) for the absurd proposition that the phrase *"under the law"* contained in Article I § 28 requires state action, and does not apply to private companies.  A copy of this decision is attached hereto for the convenience of the Court, to demonstrate defendants' blatant misstatement of this case. **The Pennsylvania Supreme Court affirmed Commonwealth Court's holding that the Insurance Commissioner's disapproval of Hartford's discriminatory sex-based auto rates as unfair and contrary to established public policy was correct under Pennsylvania's Casualty and Surety Rate Regulation Act, 40 P.S. §1181 et. seq. and under the state Constitution's ERA, Article I § 28.  <u>Hartford</u> struck down a private company's insurance rates because they offended the state ERA.**  Hartford challenged the Insurance commissioner's discretion under 40 P.S.  1181 et. seq. to set aside its sex-based auto rates.  The Court found the Commissioner acted within his discretion.  Next, the Supreme Court considered whether the Commissioner was justified in considering the state ERA in determining whether Hartford's gender-based rate plan was "unfair."  Hartford argued the Commissioner's disapproval was "an

unauthorized attempt to impose his personal theories and perceptions of social policy upon the insurance industry." The Court disagreed, and discussed use of the ERA:

> "In *Henderson v. Henderson, 458 Pa. 97, 327 A. 2d 60 (1974)* this Court explained the purpose and effect of the new constitutional amendment:
>> The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and responsibilities. The law will not impose different benefits or burdens upon the members of a society based on the fact they may be man or woman. *Id. 458 Pa. at 101, 327 A2d. at 62.*
>
> We have not hesitated to effectuate the Equal Rights Amendment's prohibition of sex discrimination by striking down statutes and common law doctrines "predicated upon traditional or stereotypic rules of men and women . . . ." *Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 299-300, 368 A. 2d 635, 639 (1977)* (plurality opinion) ("Tender years doctrine" offends concept of equality of the sexes embraced in Equal Rights Amendment.); see *Adoption of Walker, 468 Pa. 165, 360 A. 2d 603 (1976)* (Adoption Act's failure to require parental consent of unwed father as well as unwed mother violates Equal Rights Amendment.); *Butler v. Butler, 464 Pa. 522, 347 A. 2d 477 (1975)* (Presumption that where husband obtains his wife's property without adequate consideration a trust is created in his wife's favor abolished); *Commonwealth v. Santiago, 462 Pa. 216, 340 A.2d 440 (1975)* (Doctrine of "coverture" requiring presumption that wife who commits crime in presence of husband was coerced by husband discarded); *DiFloridio v. DiFloridio, 459 Pa. 641, 331 A. 2d 174 (1975)* (Presumption that husband is owner of household goods used and possessed by both spouses abolished.); *Commonwealth v. Butler, 458 Pa. 289, 328 A. 2d 851 (1974)* (Statutory scheme under which women are eligible for parole immediately upon incarceration while men must serve minimum sentence violates Equal Rights Amendment.); *Conway v. Dana, 456 Pa. 536, 318 A. 2d 324 (1974)* (Presumption that father must bear principal burden of support of minor children abolished.); cf. *Hopkins v. Blanco, 457 Pa. 90, 320 A. 2d 139 (1974)* Equal Rights Amendment requires that wife as well as husband be permitted to recover for loss of consortium.) Gender-based rates such as Hartford's rely on and perpetuate stereotypes similar to those condemned in the above cases.
>
> **(505 Pa. 571, at 583-584)**

Defendants' attempt to escape liability for blatant gender based discrimination and harassment in this case because it is not a "state actor" must fail. The <u>Hartford</u> Court specifically addressed and dismissed this precise argument:

> " . . .Further, the notion that the interpretation of this insurance statute involves

> **the concept of "state action" is incorrect in this context. The "state action" test is applied by the courts in determining whether, in a given case, a state's involvement in private activity is sufficient to justify the application of a *federal* constitutional prohibition of state action to that conduct *The rationale underlying the "state action" doctrine is irrelevant to the interpretation of the scope of the Pennsylvania Equal Rights Amendment, a state constitutional amendment adopted by the Commonwealth as part of its own organic law. The language of that enactment, not a test used to measure the extent of federal constitutional protections, is controlling."***

**(505 Pa. 587, emphasis added)**

Not satisfied with turning the holding in Hartford, *supra,* upside down and inside out, defendants try to do the same with Welsch v. Aetna Insurance Co., 343 Pa. Superior Ct. 169, 494 A. 2d 409 (1985), also attached hereto for the convenience of the Court. In Welsch, a class of male drivers under age 31 sued insurers for damages, alleging that sex related criterion in rates violated both the Federal Fourteenth Amendment and the state's Equal Rights Amendment. The Superior Court held: (1) the Complaint failed to allege state action in support for discrimination claims based upon the *federal equal protection clause*; and (2) the complaint stated a valid claim of violation of the state Equal Rights Amendment, but (3) the Court of Common Pleas lacked jurisdiction, as the Insurance Commissioner had authority to provide relief from improper rating classifications, and plaintiffs had not first gone to the Commissioner.

Application of the ERA to private parties arose in Bartholomew v. Foster, 541 A. 2d 393 (Pa. Commwlth. Ct. 1988) affirmed 563 A. 2d 1390 (Pa. 1989) presenting another challenge to gender based insurance premiums. Parents of a young male driver challenged an amendment to the Casualty and Surety Rate Regulatory Act as violating the ERA, and Commonwealth Court held the ERA applied whether or not the state was an actor. See Pfeiffer v. Marion Ctr. Area School District, 917 F. 2d 779 (3d Cir. 1990) citing Bartholomew.

Clearly, defendants in the case at bar seek to confuse the issues presented by Mrs. Barrett. She does not seek relief under the Federal Constitution's 14th Amendment. State action is not relevant to her claim under Pennsylvania's ERA. The Pennsylvania Constitution separately prohibits discrimination by the Commonwealth and political subdivisions under Article I § 26. Had the legislature intended to require state action for the ERA to apply, it would have said so. The words of the Amendment are plain and clear. Defendants see some secret code imbedded in this one-sentence Amendment, which only they can understand. They just don't get it.

Kemether v. Pennsylvania Interscholastic Athletic Assn. Inc., 15 F. Supp. 2d 740 (E. D. Pa. 1998) also held there is a private right of action for cases of gender discrimination under the Pennsylvania ERA, and held further that summary judgment was improper because there was a material factual issue. In that case, Kemether, a basketball referee, won a jury verdict and post trial motions were denied.

The Greater Hatboro Chamber of Commerce, like the PIAA in Kemether, is a private corporation. The Greater Hatboro Chamber of Commerce, like the PIAA, can be liable for gender discrimination under the ERA. There was no state action involved in Kemether. Defendants cannot escape the Constitutional prohibition on gender discrimination because the constitution reaches private action.

B. COUNT II OF COMPLAINT STATES A VALID CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CONTAINED IN PHRA.

Pennsylvania's Human Relations Act is a clear statement of public policy supporting Plaintiff's wrongful discharge claim. Indeed, 43 P.S. § 952 (a) and (b), **Findings and declaration of policy,** says so:

> "(a) The practice or policy of discrimination against individuals or groups by reason of their race, color, religious creed, ancestry . . . age, sex, or national origin is a matter of concern of the Commonwealth.  Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state . . . . .
> (b) It is hereby declared to be the public policy of this Commonwealth to foster the employment **of all individuals** in accordance with their fullest capacities regardless of their race, color, religious creed, ancestry. . . .age, sex, or national origin, and to safeguard their right to obtain and hold employment without such discrimination, to **assure equal opportunities to all individuals** . . . . ."

The statutory scheme defines "Employer" as employing four or more workers, and requires discrimination complaints against such employers to be processed by PHRC, the enforcement agency.  But where the Act's language does not specifically include an individual's claim, the remedy is to allow the bringing of suit in court to redress discrimination. See <u>Drennon v. Philadelphia General Hospital,</u> 428 F. Supp. 809 (E.D. Pa. 1977) where exhaustion of state administrative remedies *was not required* because, on the date when the epileptic plaintiff was allegedly denied employment because of her epilepsy, no state administrative remedy for such discrimination existed. The language fostering employment of handicapped individuals "in accordance with their fullest capabilities" regardless of disability, was adopted only after plaintiff was denied work.  She was not required to make a futile attempt to exhaust administrative remedies. She was entitled to bring suit, under the PHRA.

Notably absent from Defendants' brief supporting their argument against Count II is any reference to the Pennsylvania Supreme Court's decision in <u>McLaughlin v. Gastrointestinal Specialists Inc.,</u> 561 Pa. 307, 750 A. 2d 283 (2000).

In that case, the Supreme Court held that Plaintiff could not state a claim for wrongful discharge based solely upon alleged retaliation for reporting safety complaints under OSHA, a federal law.  Mary McLaughlin was an office manager in a private medical practice.  She

complained to the practice manager that the firm did not properly store a noxious disinfectant in a well ventilated space, and that exposure to the chemical harmed her. Her claim for wrongful termination cited no particular public policy, merely stating she was terminated for her good faith report of safety issues "contrary to public policy."  Employer filed Preliminary Objections claiming the Workers' Compensation Act barred the matter.  The trial court dismissed the Complaint with leave to file an action under the WCA.  The Superior Court reversed in part and affirmed in part, holding that McLaughlin's claim under the Pennsylvania Wage Payment and Collection Act, 43 P.S. §260.2a was a valid claim and should not have been dismissed, but affirming dismissal of remaining claims because of exclusivity of the WCA.

The Superior Court in McLaughlin held the complaint did not state a claim for wrongful discharge because only internal safety complaints were made; OSHA was not notified.  The Supreme Court granted allocatur regarding the claim for wrongful discharge only.  In affirming the Superior Court, the Supreme Court stated, **"We have not been presented with any issue of public policy arising from a Pennsylvania statute . . . and we are therefore constrained to decide only those issues presented to us . . .Implicit in the previous determinations of the Court is that we declare the public policy of this Commonwealth by examining the precedent within Pennsylvania, looking to our own Constitution, decisions and statutes promulgated by our legislature."** The McLaughlin Court noted the lower court implied termination of an employee in violation of a federal statute was against public policy of the Commonwealth, but there was no statute, constitutional premise or Supreme Court decision cited to support the proposition that federal administrative regulations can comprise the public policy of Pennsylvania.  Moreover, McLaughlin (unlike Mrs. Barrett in the case at bar) did not show how her discharge undermined any particular public interest of the Commonwealth, and pointed

to no Pennsylvania statutory scheme which was violated. In the present case, Plaintiff's discharge for refusing to tolerate sexual harassment and assault undermines the purpose of the PHRA as well as the constitutional ERA. The McLaughlin Court held there must be a particular articulated State public policy, in a statute or constitutional provision, which is threatened by an employee's termination, to overcome the employment-at-will presumption. Here we have both.

See also, Novosel v. Nationwide Insurance Cos., 721 F. 2d 894 (3d Cir. 1983) upholding a wrongful discharge claim of an at-will employee of a private corporation under the Fourteenth Amendment to the U.S. Constitution and under Article I §7 of the Pennsylvania Constitution. There was no state action involved; the Court held these state and federal Constitutional claims comprised public policy, violated when a claims adjuster refused to participate in a company-wide lobbying effort for revision of no-fault law, and was terminated in retaliation. In that case, as this one, defendant relied on the at-will employment doctrine.

The Novosel Court examined the origin of the tort of wrongful discharge, citing Petermann v. Int'l Brotherhood of Teamsters, 174 Cal. App. 2d 184, 344 P. 2d 25 (1959) holding that discharge for refusal to commit perjury was "patently contrary to the public welfare" and Monge v. Beebe Rubber Co., 114 N.H. 130, 316 A. 2d 549 (1975) which held a female worker was wrongly discharged for refusing to date her foreman, rejecting the employment-at-will-defense as "based on an ancient feudal system." The Novosel Court then turned to dicta of the Pennsylvania Supreme Court in Geary v. United States Steel Corp., 456 Pa. 171, 319 A. 2d 174 (1974) stating there are "areas of an employee's life in which his employer has no legitimate interest," and intrusion into such areas by use of the power to discharge could give rise to a cause of action for wrongful discharge were "a recognized facet of public policy is threatened." While Geary's holding went against the wrongful discharge claim, the case clearly

stated availability of this remedy in private employer cases, and has so been interpreted in federal court, in Bruffet v. Warner Communications Inc., 692 F. 2d 910 (3s Cir. 1982) and Perks v. Firestone Tire and Rubber Co., 611 F. 2d 1363 (3d Cir. 1979).

In Pennsylvania courts subsequent to Geary, *supra*, wrongful discharge suits have been upheld under the theory that "where a clear mandate of public policy is violated by the termination, the employer's right to discharge may be circumscribed." Shick v. Shirey, 552 Pa. 590, 716 A. 2d 1231 (1998) recognized a valid wrongful discharge cause of action for workers terminated for filing workers' compensation claims, as such discharge would allow employers to circumvent the public purpose of the state workers' compensation law.

Reuther v. Fowler & Williams Inc., 255 Pa. Superior Ct. 28, 31, 386 A. 2d 119, 120 (1978) held a worker's discharge for performing jury duty stated a valid claim for wrongful discharge in violation of recognized public policy.

Field v. Philadelphia Electric Co., 399 Pa. Superior Ct. 400, 565 A. 2d 1170 (1989) held plaintiff's discharge based on his reporting nuclear safety violations stated a wrongful discharge claim in violation of public policy. Yaindl v. Ingersoll-Rand Co. 281 Pa. Superior Ct. 560, 422 A. 2d 611 (1980) recognized a public interest in seeing to it that the employer does not act abusively. Hunter v. Port Authority of Allegheny County, 277 Pa. Superior Ct. 4, 419 A. 2d 631 (1980) recognized a non-statutory discharge claim of a public employee, allowing cause of action for wrongful discharge to be directly implied from the Pennsylvania Constitution. Hunter cited Erdman v. Mitchell, 207 Pa. 79, 56 A. 327 (1903). The public policy exception was upheld in Paolella v. Browning Ferris Inc., 158 F. 3d 183 (3d Cir. 1998), where the employee was fired for complaining about the company's illegal billing practices, the Third Circuit affirmed denial of defendant's post trial motions after jury verdict for plaintiff's wrongful discharge claim,

holding that application of the public policy exception to the at-will doctrine was not precluded merely because the employee participated in illegal activity. The jury found this was wrongful discharge in violation of public policy, and the verdict was upheld on appeal.

Boorse v. Piece Goods Shop Inc., 963 F. 2d 611 (3d Cir. 1992) reversed and remanded the lower court's dismissal of a wrongful discharge claim where the private worker was discharged for refusal to submit to urinalysis screening and personal searches at work. Borse was allowed to amend her complaint to allege how the employer violated her privacy rights under the Pennsylvania Constitution, to state a wrongful discharge claim in violation of public policy.

In Sacks v. Commonwealth of PA Dept. of Public Welfare 502 Pa. 201 (1983) a state worker was ordered reinstated following discharge for public criticism of his agency employer. Raykovitz v. K Mart Corp. 665 A. 2d 833 (Pa. Superior Ct. 1995) relying on Highhouse v. Averu Transportation Co. 660 A. 2d 1374 (Pa. Superior Ct. 1995) recognized a valid wrongful discharge claim of an employee who worked part time for K Mart, in retaliation for receiving unemployment benefits for loss of his prior full time job, on a public policy exception to the at-will doctrine.

In the present case, Plaintiff relies on a statute which clearly embodies public policy in Pennsylvania. She has a wrongful discharge claim for violation of public policy *because* she cannot pursue an administrative remedy by filing with PHRC. All of the cases cited by the defense, for the proposition that filing with PHRC under the PHRA is the *exclusive* remedy for employment discrimination, involved workers who failed to pursue the administrative process available to them because their employer had four or more employees. PHRC had jurisdiction. Here, PHRC does not have jurisdiction.

Woodson v. AMF Leisureland Centers Inc., 842 F. 2d 699 (3d Cir. 1988) was a wrongful discharge action where plaintiff was fired after refusing to serve alcohol to an intoxicated customer, in violation of state public policy.  The same kind of public policy reasoning justifies Plaintiff's wrongful discharge claim in the present case.  Further, because wrongful discharge is a common law tort, punitive damages may be recovered, unlike claims under the PHRA.

Where Plaintiff cannot exhaust administrative remedies, she cannot be dismissed from Court for failing to file with PHRC. There would be no point in doing so. The Pennsylvania Legislature did not exempt workers for companies having less than four employees from its clear, strong, and plain statement of public policy statement in 43 P.S. § 952.  It merely created an administrative process for workers from companies with four or more employees.  If there were a legislative intent that people working for smaller firms would have no remedy *under law* for misconduct which is clearly illegal when larger companies are involved, the legislature would have said so.  The idea that defendants should be allowed to escape liability for their illegal misconduct against Mrs. Barrett should be rejected.  Their motion should be overruled, denied and dismissed.

### C. IF DEFENDANTS' MOTION IS GRANTED AND THE COMPLAINT IS DISMISSED, THE PHRA JURISDICTIONAL DEFINITION OF 'EMPLOYER' AS HAVING FOUR OR MORE EMPLOYEES MUST BE HELD UNCONSTITUTIONAL UNDER THE PERA AND UNDER ARTICLE 1 § 26 OF THE CONSTITUTION.

The New Jersey Law Against Discrimination has no jurisdictional threshold for workers claiming illegal employment discrimination.  Pennsylvania's PHRA has a jurisdictional threshold of at least four employees, in order for workers' discrimination claims to be cognizable under this statute.  This means that only some women, those who work for companies employing more than four people, have a remedy under state law for sexual discrimination and harassment in the workplace.  Others, like Plaintiff, would have no such right.  This offends the clear language of

the PERA: *Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.* The only way to preserve the constitutionality of the PHRA would be to eliminate the jurisdictional threshold.

If this Honorable Court somehow finds that the PERA requires state action, then the Legislature has provided the requisite state action in eliminating Plaintiff's right to pursue her claim under the PHRA, before the PHRC, by the jurisdictional threshold.  The jurisdictional threshold in such circumstances would mean that some women are more equal than others.  This offends the equal protection guarantees contained in Article I § 26 prohibiting all governmental entities from denying individuals any civil right:

*Neither the Commonwealth nor any subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.*
Discriminatory enforcement of an ordinance is constitutionally impermissible under this provision. Harasty v. Borough of West Brownsville, 412 A, 2d 688, 50 Pa. Commwth. 186 (1980).  Preferential employment policies are unconstitutional under this section. Chmill v. City of Pittsburgh, 375 A. 2d 841, 31 Pa. Commwlth. 98 (1977).  The equal protection provision protects an individual from state action that selects her out for discriminatory treatment by subjecting her to a provision not imposed on others of the same class. Corell v. Com. Dept. of Transp., Bureau of Driver Licensing, 726 A. 2d 427, Commwlth. 1999.

Because the PHRA was enacted 16 years before the PERA was adopted by the electorate, the legislature could not have anticipated this constitutional amendment nor could it predict the effect of the jurisdictional threshold on the rights of women under the anti-discrimination law. Therefore, in the event this Honorable Court finds that Plaintiff's claim under the PERA is not cognizable or that the PHRA does not articulate public policy against sex discrimination and

harassment in employment for purposes of asserting a valid wrongful discharge claim, then the PHRA's four-worker jurisdictional threshold must be struck down as unconstitutional.

### D. STANDARD FOR DECIDING A MOTION TO DISMISS

When deciding a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) the Court may look only to the facts alleged in the complaint and its attachments. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel,</u> 20 F. 3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. <u>Angelastro v. Prudential-Bache Sec. Inc.,</u> 764 F. 2d 939 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the Plaintiff. <u>Ransom v. Marrazzo,</u> 848 F. 2d 398 (3d Cir. 1988).

## III. CONCLUSION

For the foregoing reasons and authority of law, Defendants' Motion to Dismiss must be denied, dismissed and overruled. In the alternative, the jurisdictional threshold in the Pennsylvania Human Relations Act should be declared unconstitutional.

                Respectfully submitted,

                _____
                Anita F. Alberts Esquire ID # 28086
                Counsel for Plaintiff Dolores Barrett
                The Atrium Suite 2 West
                301 South Main Street
                Doylestown PA 18901
                (215) 340-0700
                FAX (215) 340-2747