IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT** | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER | | NO. 02 -cv-4421 |
| OF COMMERCE, INC.; JOHN J.(BUD) | : | |
| AIKEN, AND MICKEY GLANTZ | : | JURY TRIAL DEMANDED |

### PLAINTIFF'S MOTION FOR SANCTIONS
### FOR FAILURE TO COMPLY WITH DISCOVERY ORDER

AND NOW, this _____day of May, 2004 comes Plaintiff Dee Barrett, by and through counsel, and respectfully requests this Honorable court to impose sanctions against Defendants pursuant to F.R.C.P. 37 for the following reasons:

    1. On February 9, 2004 Plaintiff served Request for Production of Documents to defense counsel. On April 14, 2004, no objection or answer having been received, Plaintiff filed Motion to Compel Production of Documents responsive to Requests #4, #5, #6, #7, #8, #9, #10, #11, #12, #13, #14, #15, #16 and #17. On April 20, 2004 the Court issued an Order compelling defendants to answer the request for documents and produce all documents responsive to the above requests. Exhibit "A" hereto is a copy of Request for Documents and Order to Compel.

    2. Defense counsel requested and received an extension to May 3, 2004 to comply with said Order. On or about April 28, 2004 Plaintiff received a cover letter enclosing "Defendant's supplemental document responses." No formal, signed Answer to the Request was provided.

    3. Plaintiff's Request #4 sought:

        "all insurance policies, including declarations pages, including but not limited to worker's compensation, health insurance, directors' errors and omissions coverage, general

1

liability insurance, defamation coverage, fire and theft insurance, employment practices insurance, and any other policy which may provide coverage for this case."

      4. Defendants produced no insurance policies and no declaration pages. Instead, defendants produced:   (See Exhibit "B" hereto)

    (a) Certificates of Insurance or renewal billings for general liability coverage from St. Paul and/or U.S. F&G. for 1997, 2000, 2001, 2002 and 2003. There is no specific coverage information provided.
    (b) Non Profit Professional Liability Policy Renewal Certificate from United States Liability Insurance Co. for 12/21/2003-12/21/2004, with Notice of Change in Premium dated 12/21/02; p.1 only of a coverage denial letter dated 4/27/01 addressed to Bud Aiken; letter dated 12/20/00 confirming D&O liability effective that date; and letter dated 12/27/01 for renewal of D&O plus a $50,000 bond.
    (c) workers compensation and employers liability insurance policy renewal dated 8/26/03 notice of non-renewal of workers compensation dated 8/24/02; workers compensation renewal invoice dated 6/11/01.
    (d) Harleysville Mutual Ins. Co. dec. page for commercial property policy effective 3/22/03; Harleysville notice of terrorism coverage dated 3/22/02; Harleysville premium notice dated 3/22/01; Harleysville premium notice dated 3/22/98; Harleysville premium notice dated 3/22/99; Harleysville notice of cancellation for non-payment of premium with copy of check sent 10/21/99.

      5. Request #5 sought:

    Complete copies of all records of Greater Hatboro Chamber of Commerce monetary contributions to Main Street Hatboro from 1990 through 2003.

      6. Instead, defendants produced a computer-generated check register allegedly covering 1999-2003 for general checking account at Willow Grove Bank. See Exhibit C hereto. Main Street contributions appear sporadically, may total close to $100,000[1] during the four years allegedly covered; there is no way to determine whether this is a complete check register.

      7. Request #6 sought complete copies of all state and federal tax returns filed by corporate defendant from 1990 through 2003. Instead, defendants produced one federal tax return, for 2002. See Ex. D hereto.

---

[1] This information is not all contained on the check register; other printouts, for untitled accounts, must be examined.

8. Request #7 sought:

**"Complete copies of all annual financial reports (whether or not consolidated) of corporate defendant from 1990 through 2003."**

9. Instead, defendants produced a computer printout labeled "Profit and Loss February 1999 through December 2003" which was not prepared in the ordinary course of business, was probably edited for purpose of this lawsuit, and is generally meaningless. See Ex. "G" hereto.

10. Request #8 sought "Complete copies of all records of income generated to Corporate Defendant from provision of group health insurance to Chamber members from 1990 through 2003." No documents responsive to this request were produced; partial commission (addressed below) records do not reflect Chamber income.

11. Request #9 sought:

Complete copies of all certificates of deposit, savings accounts. reserve accounts, money market accounts, tree maintenance fund, Main Street Hatboro account, Hatboro Library account, and all other investments owned by, or if otherwise titled, held for the benefit of, Greater Hatboro Chamber of Commerce.

12. Instead, defendants produced assorted untitled computer generated "Transaction Detail by Account" documents labeled "February 1999 through December 2003" but only including items from November 2001 through July 2003 or other dates. See Ex. E hereto.

13. Request #10 sought "All contract or letters of engagement for accounting services and/or financial management or consulting services provided to corporate defendant from 1993 to 2003." No responsive documents were produced.

14. Request #11 sought "Complete copies of all records of expenditures made by or on behalf of corporate defendant from 1993 through 3003." Instead, defendants produced the check register printout (Ex. C) and computer printouts from a money market fund and several event accounts purporting to contain items from parts of 1999 through parts of 2003. Ex. "F" hereto.

3

15. Request #13 sought "Complete copies of quarterly insurance commission statements provided to or for Greater Hatboro Chamber of Commerce by Diverse Technical Lines from 1993 through 2003." Instead, defendants produced partial computer printouts of these commissions from parts of 1999 through parts of 2003.[2]

16. Request #14 sought "Complete copies of all revenue generated from membership dues and/or any other source to Greater Hatboro Chamber of Commerce from 1993 through 2003." Instead, defendants produced the jumbled four-year "profit and loss" computer-generated report attached as Exhibit G hereto.

17. Request #15 sought "Complete copies of all Chamber meeting minutes, with attached Treasurer's reports, for January 1997 through February 2003." Instead, defendants produced one set of meeting minutes dated 5/21/91, another minutes document from 2/27/91, a treasurer's draft report from 1997/98; and a proposed budget for 2001/02-2003/04. See Ex. H hereto.

18. On Wednesday May 5, 2004 Cathy A. Fullam, CPA and Treasurer of the Greater Hatboro Chamber of Commerce and member of the board of Directors, appeared for deposition. Copy of transcript is attached hereto as Ex. I. Ms. Fullam's firm prepares the chambers tax returns and she prepared the quarterly Treasurer's Report and all annual financial statements.

19. *Ms. Fullam is the custodian of corporate defendant's financial records and tax returns, which are prepared by her firm. Ms. Fullam did not prepare any of the alleged financial records produced, was unable to say they were accurate or were kept in the usual and ordinary course of business, and was never asked to provide any financial records for Plaintiff's Request for Production of Documents.*

---

[2] Plaintiff wanted the information from 1993-2003 to see the effect of her work in recruiting Chamber members, who often joined the Chamber in order to purchase health insurance for their employees. By arbitrarily limiting the records to parts of 1999 up to the present, defendants eliminated nine years of Plaintiff's membership recruitment efforts and commissions earned for benefit of the Chamber; this is a major source of income.

20. When Plaintiff's counsel asked whether defendants are paying counsel from the Chamber's regular checking account, defense counsel directed Ms. Fullam not to answer.

21. The Order of April 20, 2004 directing corporate defendant to produce all documents responsive to Plaintiff's Request for Production of Documents has not been answered, and virtually no responsive documents have been produced.

22. Plaintiff never had a formal performance evaluation, and to a large extent must rely on documentation of the Chamber's improved financial situation to show her contribution to its success. She is therefore materially prejudiced in her preparation of this case for trial by defendants' refusal to comply with the Order of Court. She is unable to use any document produced and unable to draw any conclusions or to make any sense of the papers produced.

23. Defendants have deliberately and willfully violated an Order of Court for discovery and should, after opportunity for hearing, be held in contempt and subjected to sanctions under and pursuant to F. R.C.P. 37(b)(2) and 37 (d) within the sound discretion of this Court. WHEREFORE, Plaintiff requests that a Hearing be scheduled to determine the imposition of appropriate sanctions, including possible entry of judgment by default against defendants, imposition of a monetary fine and/or reasonable counsel fees for filing the Motion to Compel, the Motion for Sanctions, and representation at sanctions hearing, within the sound discretion of this Honorable Court. Contents of attached Memorandum of Law are incorporated herein.

Respectfully submitted,

(Signature Code AFA2128)

_____
Anita F. Alberts Esquire
Counsel for Plaintiff Dee Barrett
The Atrium Suite 2 West
301 South Main Street
Doylestown PA 18901
(215)340-0700