IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES (DEE) BARRETT | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER OF COMMERCE, INC.; JOHN J.(BUD) AIKEN, AND MICKEY GLANTZ | : : : | NO. 02 -cv-4421 JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW SUPPORTING
PLAINTIFF'S MOTION FOR SANCTIONS
FOR FAILURE TO COMPLY WITH DISCOVERY ORDER**

I. INTRODUCTION

This Motion for Sanctions follows two Court Orders compelling discovery. The first required Aiken to appear for deposition by April 1, 2004, after Plaintiff's attempts to schedule his deposition beginning in November 2003 failed. The second order compelled defendants to answer her Request for Production of Documents and produce the documents. Defendants did neither.

Plaintiff was Executive Director of defendant corporation for ten years. She has just one claim, under the Pennsylvania Constitution's Equal Rights Amendment. She was subjected to disgusting physical and verbal sexual degradation and harassment by two successive Presidents of the Board of Directors of the Greater Hatboro chamber of Commerce, Bud Aiken and Marshall (a/k/a Mickey) Glantz. Glantz's filthy mouth was offensive and constant. Aiken's unwanted touching culminated in indecent exposure of his private parts in the Chamber office, and when she yelled and threw him out, he "reorganized" the one-person office staff and took her job himself. Defendants then denigrated Barrett's reputation in the community, and she could

1

not find local employment. She moved to New Jersey and got a job. Jurisdiction is based on diversity of citizenship.

Defendants have just two defenses: (1) None of this ever happened[1]; and (2) Neither they nor the Chamber has any insurance, and they have no money to settle. As for the second, financial, defense, counsel made representations to the Court, and to Plaintiff, that there is neither insurance nor money which could satisfy a judgment, so she should simply go away. Nonetheless, defendants have retained experienced and specialized counsel with offices in downtown Philadelphia, and are financing this litigation somehow. They are vigorously defending every claim Plaintiff makes, by denial and evasion. So far, defense costs have probably exceeded any potential offer to settle. Yet the fight goes on. Defendants are business people and a business association. They have assets.

Defendants made no objection to Plaintiff's request for financial reports and other information, including minutes of Chamber meetings and treasurer's reports. Indeed they have not even bothered to *answer* the Request for Production. They prefer to create confusion by producing financial "documents" not prepared in the normal course of business. And they prefer to ignore routine requests for minutes of Chamber meetings. Even after Plaintiff finally had to resort to a Motion to Compel, and obtained an Order to comply "forthwith" they delayed, and came up with papers that prove nothing -- except that something is being hidden. Assets are hidden, and may have been transferred.

Defendants' Treasurer, a CPA and custodian of the Chamber's tax returns and financial records, was not permitted to answer a simple question, i.e. whether defense counsel's fees are being paid from the General Checking Account. (See Ex. I hereto, deposition of C. Fullam, N.T. 5/5/04, at p. 32.) There is no "privilege" objection; the check register for the corporate General

---

[1] This is not an unusual defense. The second defense, however, is novel in the experience of undersigned counsel.

Account does show a few payments to defense counsel, for legal representation. It was a straightforward question. There is no reason why it cannot be answered, except for purposes of concealment. One sanction Plaintiff requests is to establish in the record of this case, and to advise the jury at trial, that defendants are concealing financial information and sources of funds to finance this litigation.

Ms. Fullam also was unable to vouch for the accuracy of the documents produced, which she was shown; the four-year purported P&L statement (ex. G hereto) was a Quickbooks printout' Fullam uses Excel and was confused as to whether it covered only one year or four, and could not determine the accuracy of any numbers without careful review (Fullam, N.T. 5/5/04, pp. 12 through 14). Fullam was not asked to supply the documents requested; defendants decided instead to produce what they wished, and as little of it as possible. Limiting the financial information to 1999-2003 is especially prejudicial for Plaintiff, who was fired in 2000; the contributions she made to the Chamber are simply unavailable for comparison over the years she was there. We have no idea where these documents came from or what they mean.

This concealment may well be directly related to the deposition testimony of Glantz and Aiken, both of whom denied ever receiving Plaintiff's repeated written requests to stop touching her, and to stop sexually degrading remarks against her. If Glantz and Aiken are being defended at the cost of the Chamber on condition that they have not done what Plaintiff claims, and would have to indemnify the Chamber if they are found liable, they both have a tremendous financial incentive to deny everything Plaintiff says.

II. DISCUSSION

Roadway Express v. Piper, 100 S. Ct. 2455 (1980) held attorney fees could be awarded as sanctions under Rule 37 for failure to comply with discovery; the Court has inherent power to

assess attorney fees in certain cases, and in some circumstances attorney fees could be assessed against counsel.[2] Link v. Wabash R. Co., 370 U. S. 626, 82 S. Ct. 1386 (1962) recognized the well established, inherent power of a Court to levy sanctions in response to abusive litigation practices.

Ingram v. Home Depot Inc., 1999 U. S. Dist. LEXIS 1725, Feb. 19. 1999, Hutton, J., an employment discrimination case, held that Home Depot must produce documents relating to the employer's discharge, promotion, and transfer of non-whites because the information was relevant and could lead to discovery of admissible evidence. Judge Hutton also ordered Home Depot to produce pre-construction market studies of its stores constructed in the Philadelphia area, because one of the factors considered in those studies was racial demographics. The company hired workers based on racial composition of the market area, but did not promote nonwhite management trainees above the assistant store manager level. In that case, defendant made numerous objections to production of the requested documents. But in this case, NO objection is being made to any request for production -- and *even the Chamber's tax returns, which are publicly available because of its "nonprofit" tax status, are being withheld.*

The conduct of defendants in discovery in this case displays an arrogance and disrespect for rules of Court, and Orders of Court. Defendants are entitled to a hearing, and should be required to produce each and every document requested and withheld, and explain to the Court their reasons for concealment. The current President of the Chamber of Commerce made absolutely no effort to comply with the Court Order. Aiken and Glantz, while denying everything, appear to be distancing themselves from the Chamber, as though they are no longer involved. They should be required to explain why the financial documents are being withheld --

---

[2] Plaintiff does NOT seek sanctions against defense counsel. Plaintiff believes defendants, not counsel, are responsible for the failure to provide routine discovery and comply with Court orders.

if not to protect the Chamber, perhaps to protect them. The Chamber's books must be open to preserve its favorable tax status. Have Chamber funds been transferred somewhere so as not to appear "on the books?"

Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. <u>Oppenheimer Fund Inc. v. Sanders,</u> 98 S. Ct. 2380, 437 U.S. 340 (1978); see also, <u>Financial Bldg. Consultants Inc. v. American Druggists Ins. Co.</u>, 91 F.R.D. 59 (D. C. Ga. 1981)

Additionally, <u>Constitution Bank v. Levine,</u> 151 F.R.D. 278 (E. D. Pa. 1993) recognized that the propriety of discovery sought is not at issue at the time sanctions are being imposed for failure to comply with a discovery order.

Plaintiff requests Defendants be assessed a fine of at least $3,000, and also be required to pay counsel fees for filing the second Motion to Compel, this Motion for Sanctions, and representation at the hearing for imposition of sanctions. Plaintiff requests that the jury be told defendants are self-insured, financially responsible, and have hidden their assets to escape liability in this case, and deny every contention of sexual discrimination, degradation and harassment that Plaintiff has made to protect their assets from Plaintiff's judgment.

III. CONCLUSION

For the foregoing reasons and authority of law, Plaintiff requests a hearing be scheduled for imposition of sanctions, including a fine, counsel fees, and establishment of facts concerning concealment of financial documents, to be read to the jury in this case, pursuant to F.R.C.P. 37.

                Respectfully submitted,

                (Signature Code AFA 2128)
                _____
                Anita F. Alberts, Counsel for Plaintiff.