**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT** | : | |
| | : | |
| **V.** | : | **CIVIL ACTION - LAW** |
| | : | |
| **THE GREATER HATBORO CHAMBER OF COMMERCE, INC.; JOHN J.(BUD) AIKEN, AND MICKEY GLANTZ** | : | **NO. 02 -cv-4421** |
| | : | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S BRIEF OPPOSING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants challenge Federal diversity jurisdiction because Plaintiff jointly owned a summer house in New Jersey with her husband before she moved there in April 2001. Defendants infer that prior ownership of real estate in New Jersey defeats her change of domicile, but have no judicial authority for such a theory.

Ownership of property in more than one state is not relevant to establishment of domicile. Plaintiff's forced change of domicile to New Jersey after Pennsylvania defendants discharged her from employment in October 2000 was real, because she found work in New Jersey. She fulfilled her duty to mitigate damages. She lost her job in retaliation for her rage at Aiken's indecent exposure at her office in late 1999. This is not "manufactured diversity." Plaintiff was domiciled in Hatboro PA, where she worked, in 2000. When suit was filed in July 2002 Dee Barrett was, and still is, a New Jersey citizen.

Plaintiff and her husband are "getting ready to sell" their home in Pennsylvania. (Barrett, N. T. 6/16/04, p. 194 lines 4-6). Yet, Defendants attempt to manufacture testimony against jurisdiction and attribute it to the Plaintiff. Defendants attempt to mislead the Court by falsely claiming, at Brief, p. 4, " . . .Plaintiff testified that on the date of said filing of her complaint, she

lived at her Pennsylvania residence but she would stay at the New Jersey residence during the week because of work" citing to p. 191 of her deposition. This is the actual testimony on p. 191:

> **"Q. And what is your basis for alleging that you now reside in Cape May, at least as of the date you filed this Complaint on July 3, 2002?**
> **A. Okay, Well, I work there so I spent, you know, my days there. And we only come home on the weekends after work on Friday and we leave either early Sunday night or early Monday morning because I have to go back to work. So I can't travel back and forth two and a half hours each way so we live there.**
> **Q. During the weekend?**
> **A. Well right now we're living there on the weekend too.**
> **Q. It's the summertime.[1]**
> **A. Yeah. No. I live there all winter. I have to live there for my job.**
> **Q. But you file your tax returns -- in 2002, your federal tax returns were filed out of Pennsylvania?**
> **A. You know, I'm thinking about that. I think it was New Jersey because Jim works in New Jersey too and so did I, you know.**
> **. . . . .** (Barrett, N.T. 6/16/04, p. 190 line 25-p. 191 line 23)

Defense counsel argues, incredibly, that this testimony is where "plaintiff testified that on the date of said filing of her complaint she lived at her Pennsylvania residence"!?!? Where did she say that? Nowhere. It is not possible to identify which words he did not understand. The defense argument *against* diversity of citizenship is "manufactured," in every sense of the word. At the very least, it is extraordinarily creative.

Also see p. 4 line 5, second paragraph, of Defendants' Brief, regarding manufactured "evidence" .[2] After Plaintiff's firing from her 10-year position as Executive Director of the

---

[1] The Complaint in this action was filed in summer 2003, on July 3, at which time defense counsel acknowledged the Barretts did not travel to Pennsylvania on any weekends. The fact that Plaintiff used the word "home" when referring to Hatboro PA is apparently the core of the defense challenge to diversity jurisdiction. But it is legally insufficient, for there are two elements to establishing a change of domicile: residency, i.e. physical presence, plus intent to remain. Neither the physical presence nor the intention to remain is alone sufficient. Wright, Federal Courts § 26 at 86, (2d ed. 1970). If the new state is to be one's home for an indefinite period of time, [the individual] has acquired a new domicile. Gallagher v. Phila. Transp. Co., 185 F. 2d at 546 (3d. Cir. 1950).

[2] The first cite to Plaintiff's deposition is page 3. Looking at p. 3, we see that the stenographer did a very unusual thing. She typed in "2400 Karen Lane Hatboro PA 19040" after Plaintiff's name but BEFORE her sworn testimony. Mr. Gold did not ask Plaintiff her address, probably because he knew he would have gotten an answer he did not want, i.e. the address in Cape May where she and her husband live, in New Jersey. He wanted to create testimony and attribute it to Plaintiff, without asking her the very ordinary, usual first question in any deposition, i.e "Please state your full name and address for the record." He only asked Plaintiff to state her name, because his stenographer would put her Pennsylvania address in the transcript, *before her sworn testimony*.

Greater Hatboro Chamber of Commerce in October 2000, defendants publicly announced she was let go, and despite a seven-month job search she was unable to find any comparable job in eastern Pennsylvania. She had to move her home to New Jersey. (Affidavit, Ex. A, ¶1)

It is true that Mrs. Barrett's testimony at p. 138 was ambiguous, about voting, stating at p. 138 lines 8-10 that she voted in Pennsylvania until 2003, but on p. 139 lines 15-19 she testified she was heavily involved in local politics in Middle Township, Cape May courthouse, and had not voted in Pennsylvania for two years, which would include the July 2002 date of filing the Complaint, as her deposition was taken in June 2004. Also on p. 139 Mrs. Barrett, mistakenly, testified that she paid Pennsylvania income tax in 2004, which is not correct. She earns no income in Pennsylvania. She pays NJ income tax, not Pennsylvania. And when she testified at p. 138, p. 142 and 143 that she "never paid income tax for New Jersey or filed returns in New Jersey" she literally did not know she was incorrect, because her husband prepares their New Jersey state taxes, and their federal taxes, at Hatboro. She explained her statements at p. 191-192:

> "Q. But you file your tax returns -- in 2002, your federal tax returns were filed out of Pennsylvania?
> A. You know what, I'm thinking about that. I think it was New Jersey because Jim works in New Jersey too and so did I, you know.
> Q. Well, if in fact --
> A. I have to look. I don't know for sure.
> Q. Okay. And your tax returns for 2003, last year, what was the address on the return?
> A. It was 103 Beach Avenue.
> Q. 103 Beach Avenue?
> A. Pierces Point, Cape May Courthouse.
> Q. So you filed your federal tax return out of New Jersey last year?
> *A. Yes. What confuses me -- and it sounds stupid -- is when we come up here on the weekend, he's on the computer doing them and we're mailing them from here, but I remember signing it. It said 103 Beach Avenue.*
> Q. Do you still pay state income taxes in Pennsylvania?
> A. I don't think so. You know what, I don't really pay too much attention to that. Jim does all that. (Barett, N.T. 191 line18-p. 192 line 21)

On April 29, 2001 Dee Barrett started her current job as Executive Director of the Greater Wildwood Hotel Motel Association, in NJ. Her husband Jim had worked in New Jersey for years. The Barretts' joint checking and saving accounts were already opened in New Jersey. (Ex. A, ¶2, and attached check showing address, account number) Mr. and Mrs. Barrett moved from Hatboro Pa. to Cape May Courthouse NJ in late April 2001, to their summer home. The shore house was not livable in winter, when the water had to be turned off; the pipes were not insulated and would burst. In October 2001 the couple rented an apartment in Sea Isle City NJ and lived there so they could both commute to their jobs.

In 2002 Dolores and Jim Barrett were residents of New Jersey, filing a Homestead Tax Rebate Application and a joint New Jersey State Income Tax Return, form 2002 NJ1040 (see Ex. A. ¶4 and attached tax forms). They did not pay Pennsylvania income tax; they earned no income in Pennsylvania.

In April 2002 the Barretts' auto insurance bill (Attached to Plaintiff's Affidavit, Ex. A, ¶4) showed both cars were registered and insured in New Jersey, which was also true in July 2002 when this suit was filed. Also in April 2002 Mr. and Mrs. Barrett resumed living in their NJ beach house, and over the summer had it properly insulated so the pipes would not freeze in winter. They have lived there ever since, visiting Pennsylvania on winter weekends, as Dee's executive director job includes frequent weekend work during the Jersey tourist season in spring, summer and sometimes into the fall. (Barrett, N. T. 6/16/04, p. 194 line 23- p. 195 line 25).

In August 2002 Jim Barrett suffered a heart attack and was seriously injured in an accident in New Jersey while coming home from work. (Ex. A, ¶ 9) He is now disabled and is no longer working. For this reason, Dee Barrett has no intention of leaving her home or her job in NJ, and so testified at her deposition:

> ". . .You know, I had gotten so many calls at home from other chambers. . .when they saw [my discharge] hit the paper. So I had no choice but to seek employment out of the state.. . . my husband worked at Martin Lockheed and it was a two-hour drive for him. . .
> Q. Which division of Lockheed Martin?
> A. Morristown.
> Q. New Jersey?
> A. Yes. . . .
> . . .
> Q. Has he recovered from that?
> A. No. He still has to have more surgery. He retired -- well, disability, Social Security, but we no longer earn the type of money that we did. *So right now I'm locked into that job. Whether I want to stay there or not, I'm locked. . . .*
> (Barrett, N. T. 152-153, emphasis added)

Defendants cannot argue that she does not intend to remain in New Jersey indefinitely or that she did not also intend to remain there indefinitely in July 2002 when she filed this suit, so they have tried to fashion an argument against diversity based on Plaintiff's personal, but impossible, desire to return to Pennsylvania someday. This does not affect diversity jurisdiction, for no intent to *permanently* remain in a changed domicile is necessary. See legal discussion, below.

**II. DISCUSSION**

**A. Plaintiff had established domicile in New Jersey before, and on, the date she filed the Complaint in this action. Diversity of Citizenship genuinely exists and this court has proper jurisdiction in this case.**

In the context of diversity jurisdiction, allegations of residency alone cannot establish citizenship. <u>Geller, et. al., v. Prudential Insurance Co., et. al.,</u> 2002 U. S. Dist. LEXIS 9921 (No. 96-cv-0976, E. D. New York, June 4, 2002). Citizenship is determined by domicile. Domicile is the place where a person has his true fixed home. Although persons may have more than one residence they may have only one domicile at a time. <u>Gutierrez v. Fox,</u> 966 F. Supp. 214 (S. D. N. Y. 1997). Domicile requires physical presence and intent to remain indefinitely. <u>Geller,</u> *supra.* Since April 2001 Dolores Barrett has resided and worked full time in New Jersey and intends to remain indefinitely. (Ex. A, ¶ 3).

Proof of intent to remain at one's residence *permanently is not the test* of one's domicile. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. Krasnov et. al. v Dinan, 465 F. 2d 1298 (3d Cir. 1972). Krasnov is cited by defendants but their reliance on that decision is misplaced, for the facts are easily distinguished from the present case, and as the Third Circuit noted, the determination of one's citizenship is a factual finding. In Krasnov, a Pennsylvania plaintiff sued a member of a religious order based in Connecticut based on diversity jurisdiction. Defendant taught wherever the church sent him and was teaching in Pennsylvania when the suit was filed. He had a Connecticut driver's license and listed Pennsylvania as his residence when he renewed it. Defendant testified that his home was wherever he was at the time. After hearing, the Third Circuit found there was no diversity jurisdiction as both Plaintiff and Defendant were citizens of Pennsylvania at the time suit was filed. That simply is not this case.[3]

Where the ultimate conclusion is a determination of a party's citizenship, the requisite intention to establish domicile, and therefore citizenship, is a factual finding. Gallagher v. Philadelphia Transportation Co., 185 F. 2d 543 (3d Cir. 1950). To find this intention, the Court must find "an actual, not pretended, change of domicile; in other words, the removal must be "a real one, *animo manendi,* and not merely ostensible. Case v. Clarke, 5 Mason, 70. The intention and the act must concur in order to effect such a change of domicile as constitutes a change of citizenship. Morris v. Gilmer, 129 U. S. 315, 328, 9. S. Ct. 189, 193 (1889). Professor Wright has neatly synthesized the doctrine:

---

[3] All defendants live in Hatboro PA, and did at all times relevant to the Plaintiff's employment. Significantly, none of the Defendants contend, by affidavit or otherwise, that Plaintiff did not move to New Jersey in April 2001 when she obtained her current employment. Hatboro is a small town, and defendants are well aware that Dee Barrett and her husband have not lived, voted or worked there for nearly four years. These are politically active business people and their organization is the local Chamber of Commerce. If there were any evidence to the contrary of Plaintiff's allegations, it would be known to these defendants. And it would have been presented to the Court.

**"A citizen of the United States can change his domicile instantly. To do so, two elements are necessary. He must take up residence at the new domicile, and he must intend to remain there. *Neither the physical presence nor the intention to remain is alone sufficient."*** Wright, Federal Courts §26, at 86 (2d ed. 1970).

Krasnov, 465 F. 2d at 1300 (emphasis added)

Dee Barrett lives in New Jersey and intends to remain there indefinitely because her work is there, and this was also true at the time this suit was filed. Defense argues that because her *desire* was to have remained in Pennsylvania her "intent" was to "remain" in Pennsylvania -- *but her wishes alone are not sufficient*. Defendants' wishes are also not sufficient. Plaintiff has to work. She has no job here. Both presence -- residency -- and intent to remain are the necessary elements of citizenship. Dolores Barrett has not lived or worked in Pennsylvania since April 2001. Her home is with her husband, who also has not lived or worked in Pennsylvania since then. In April 2001 the couple moved together, to New Jersey, because of her new job. "In determining whether a party has intended to establish a domicile in the state to which he has moved, the factfinder will look to such circumstances as his declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." Wright, Federal Courts § 26, at 87 (2d ed. 1970); Mitchell v. United States, 88 U. S. 350, 353 (1874).

Because Plaintiff and her husband were living together in New Jersey, where their jobs, savings and checking accounts, car registrations, insurance, social and political activity were centered, on the day in July 2002 when this suit was filed, diversity jurisdiction exists. It cannot be defeated by any mere desire, subsequent move or change of residence. Freeport-McMoran et. al. v. K N Energy Inc., 498 U. S. 426, 111 S. Ct. 858 (1991). Diversity of citizenship is assessed at the time the action is filed. Courts have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events. Mollan v. Torrance, 9 Wheat. 537 (1824); Clarke v. Mathewson, 12 Pet. 164, 171 (1838); Wichita

Railroad & Light Co. v. Public Utility Commission of Kansas, 260 U. S. 48, 54; 43 S. Ct. 51 (1922). It is the citizenship of the parties at the time the action is commenced which is controlling. Brough v. Strathmann Supply Co., 358 F.2d 374 (3d Cir. 1966).

**B. Plaintiff has a Valid Cause of Action under Article I § 28 of the Pennsylvania Constitution in this Case.**

At pp. 6-8 of defendants' brief, there is deliberate confusion of two arguments:

(1) Whether state action is required for Plaintiff, an individual, to state a claim under Article I §28, the Equal Rights Amendment of the Pennsylvania Constitution, and

(2) Whether anyone can state a claim for damages under Article 1 §28 of the Pennsylvania Constitution, *regardless* of whether or not there is state action.

The first issue was the same issue decided by this Honorable Court in Barrett v. Greater Hatboro Chamber of Commerce Inc., 2003 U. S. Dist. LEXIS 15498 (E. D. Pa. Aug. 19, 2003), in Plaintiff's favor, and the Court is asked to revisit this decision because of decisions in two other cases, one by Judge Baylson and one by Judge Davis, *which were, admittedly, decided without regard to the existence or absence of state action.* Defendants now contend that their issue, and their prior motion, should have been based on the second issue, i.e. now claiming that *no one can state a claim for damages under the Pennsylvania Constitution regardless of whether state action exists or is absent.* Defendants are totally incorrect in stating that the Court relied on cases which did not address the state action issue. The Court specifically relied on Hartford Acc. and Indem. Co. v. Insurance Com'r of Com., 505 Pa. 581, 482 A. 2d 542 (1984) and Welsh v. Aetna Insur. Co., 343 Pa. Super. Ct. 169, 494 A. 2d 409 (1985) both of which held that state action is not necessary for an individual to file a claim under the state Constitution, in addition to Bartholomew v. Foster, 115 Pa. Commw. Ct. 541 A. 2d 393 (1988).

To the extent that defendants attempt to argue that no one has a private right of action for damages under the state Constitution, regardless of whether there is "state action," defendants merely cite the Pennsylvania Human Relations Act, which was adopted by the state legislature in 1955, while the state ERA was ratified by the voters in 1971.[4] There is absolutely no state or federal judicial authority for the proposition that the PHRA can abrogate the State Constitution. This argument was made by defendants and rejected by this Honorable Court before. The decision of August 19, 2003 is the "law of the case."

However, the argument that no right of action for money damages exists under the PERA or any other provision of the Pennsylvania Constitution[5] regardless of state action has not previously been made in this case. To the extent that defendants may be arguing that issue now, it will be addressed, though defendants cite no judicial authority whatsoever.[6]

No Pennsylvania state court has ever held there is either municipal immunity from damages for unconstitutional conduct, or that no cause of action for money damages for unconstitutional conduct exists regardless of state action. But there is ample support in the Pennsylvania Constitution for civil remedies for constitutional violations. Article I § 11 states:

> **All courts shall be open, and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.**

---

[4] This is the reason why, as stated in defendants' brief at p. 8, "notably absent in the language of the PHRA is any reference to the remedy [PERA] in the Pennsylvania Constitution." Moreover, the fact that the PERA was ratified by the voters in 1971, 16 years *after* the state legislature enacted the PHRA, is another reason why, under principles of construction, the PERA governs. Not the other way around. The legislature cannot abrogate a constitutional provision, and defendants' repeated argument to the contrary is improper.

[5] Defendants cite Douris v. Schweiker, 229 F. Supp. 2d 391 (E. D. Pa. 2002) and several other cases in a footnote at p. 7 of their brief, claiming that all cases cited hold there is no private cause of action for damages under the PERA, but this is not so. Not one of those cases involves claims under the PERA.

[6] The authority for this section of Plaintiff's Breif is largely taken from the extensive analysis of this issue by Philadelphia Common Pleas Judge Lisa Rau in Thomas Jones v. City of Philadelphia, October Term 2001 No. 3641, Philadelphia Court of Common Pleas, July 30, 2004. A copy is attached hereto for the convenience of the Court. It is true that a municipal defendant is involved, unlike the private defendant parties in the instant case, but it is governmental defendants which generally argue that no private cause of action for money damages exists under the Pennsylvania Constitution, which is the issue defendants now appear to attempt to raise in the case at bar.

This language has remained verbatim in every version of the Pennsylvania Constitution since 1790. Article I § 25 commands that the rights enumerated in the Declaration of Rights "shall forever remain inviolate" and are "excepted out" of any government control. Thus, precluding civil remedies for constitutional violations would ignore the self-executing language in the Pennsylvania Constitution, and would drop fundamental constitutional rights to a lower status than common law torts, and defy the Constitution's prohibition (Art. I §§25 and 26) against denying civil rights to citizens. In Erdman v. Miller, 207 Pa. 79, 56 A. 327 (1903) the Pennsylvania Supreme Court held that Article I § 1 of the state Constitution was self-executing for the rights protected in Article I, the Declaration of Rights:

> **This clause, unlike many others in the constitution, needs no affirmative legislation, civil or criminal, for its enforcement in the civil courts. Wherever a court of common pleas can be reached by the citizen, these great and essential principles of free government must be recognized and vindicated by that court, and the indefeasible right of liberty and the right to acquire property must be protected under the common-law judicial power of the court. Nor does it need statutory authority to frame its decrees or statutory process to enforce them against the violators of constitutional rights.**
>
> **56 A. at 331 (Pa. 1903)**

See also, Spayd v. Ringing Rock Lodge, 270 Pa. 67, 113 A. 70 (Pa. 1921) holding that plaintiff union member had a private right of action against the union, a non-governmental entity, pursuant to Art. I §7. See also, Hunter v. Port Authority, 419 A. 2d 631 (Pa. Superior Ct. 1980) upholding a private cause of action for a state constitutional violation. The Pennsylvania Supreme Court in R. v. Commonwealth, 636 A. 2d 142 (Pa. 1994) rejected both state and federal constitutional claims on the merits but provided compelling instruction relevant to this case by noting that a civil state constitutional claim can afford broader protection than federal constitutional claims, citing Commonwealth v. Sell, 504 Pa. 46, 470 A. 2d 457 (1983) which

reaffirmed that the Pennsylvania Constitution is an independent source of rights, and that it can provide greater protections than those guaranteed by the Federal Constitution.

In Harley v. Schuylkill County, 476 F. Supp. 191 (E. D. Pa. 1979) the district Court interpreting state law relied upon the Pennsylvania Supreme Court's analysis in Erdman, *supra,* and held that Article I § 1 was self executing and permitted a constitutional claim for deprivation of liberty and due process interests. Pennsylvania Courts have historically permitted claims seeking remedies for violations of the rights set forth in the Pennsylvania Constitution. See Agostine v. School Dist. of Phila., 527 A. 2d 193 (Pa. Commw. Ct. 1987); Thelin v. Borough of Warren, 544 A. 2d 1135 (Pa. Commw. Ct. 1988); Williams v. City of Pittsburgh, 531 A. 2d 42 (Pa. Commw. Ct. 1987); Holland Enterprises v. Joka, 439 A. 2d 876 (Pa. Commw. Ct. 1982); Hunter, supra.

In Berry v. County of Bucks, et. al., 2002 WL 373338 (E. D. Pa. 2002, Clifford Scott Green, S. J.), the county's motion to dismiss plaintiff's PERA claim was rejected. In that case, government Defendants argued the Political Subdivision Tort Claims Act (PSTCA) rather than the PHRA pre-empted state Constitutional claims. But the Court in that case rejected this argument and denied defendants' motion to dismiss.

The Political Subdivision Tort Claims Act does not include constitutional claims. The very title of the Act and its language shows it applies only to tort claims, and not constitutional claims. It does not even mention the constitution, and certainly not the PERA, which was ratified in 1971, some years *after* the tort claims law was enacted. No statute (here, the PHRA) cannot invalidate a constitutional provision. See Hayes v. Mercy Health Corp., 739 A,. 2d 114 (Pa. 1999) construing 1 Pa. C.S.A. § 1921(b).

No Pennsylvania court has held the PSTCA immunizes a municipality against liability from constitutional claims. In Coffman v. Wilson Police Department, 739 F. Supp. 257 (E. D. Pa. 1990), Chief Judge Edward Cahn held specifically that the PSTCA does not immunize a municipality from a state constitutional claim; that case involved claims under Article I §§1, 8 and 26 and defendants made the same argument as in the present case. Judge Cahn wrote:

> **The defendants are wrong. Their error stems from the limited scope of the statute granting partial immunity to municipalities. As the title of the [PSTCA[ indicates, the immunity granted covers only torts (and, at that, only claims sounding in negligence). Claims arising from the Pennsylvania Constitution may still be raised against local governments. This result is logical; it would be peculiar if the legislature could abrogate rights protected by the Constitution.**

Coffman cited numerous cases (including Thelin and Holland Enterprises, supra) permitting state constitutional claims against local governments decided after passage of the PSTCA where no claims of immunity were made. In Warren by Warren v. Cheltenham Township, 1995 WL 732804 (E. D. Pa. 1995) the court held the PSTCA "does not render local governments immune to actions under the constitution of Pennsylvania." Grimm v. Borough of Norristown, 226 F. Supp. 2d 606 (E. D. Pa. 2002) held "We believe that defendants may not claim immunity against claims brought under the Pennsylvania Constitution."

The U. S. Supreme Court held in Howlett v. Rose, 496 U.S. 356 (1990) that states could not legislatively or by common law immunize municipalities, counties and school districts from federal constitutional claims under the guise of sovereign immunity. Otherwise, "states would be free to nullify for their own people" these federal civil rights. The same logic applies here. Defendant Chamber of Commerce seeks to nullify Plaintiff Dee Barrett's Constitutionally protected rights.

**C. Defendants' Argument Against Liability of Aiken and Glantz has no merit.**

The only reason offered against liability of Aiken and Glantz is that they were not "employed" by the Greater Hatboro Chamber of Commerce. This is not quite accurate, for Plaintiff was fired because the Chamber decided to give her job to Bud Aiken, in a fictional "reorganization," and he was subsequently employed, as a reward for his years of disparate treatment and sexual harassment of Dolores Barrett. Nonetheless, there is no such requirement (that all defendants be employed by the same entity) under the PERA, or the PHRA, for that matter. It is hard to fathom where defendants are coming from. Perhaps they contend that the corporate defendant should cover any jury verdict against them, which would be agreeable to Plaintiff.

Defendants correctly note that there is no individual liability under Title VII, and defendants also correctly note that *there is* individual liability under the PHRA's "aiding and abetting" clause, 43 P. S. § 955(e). They do not acknowledge that § 955(e) includes liability for "any person" who aids, abets, incites, compels or coerces any unlawful discriminatory act, not just employees. In this regard, Spayd v. Ringing Rock Lodge, supra, and Erdman v. Mitchell, supra, involved individual persons or unincorporated groups who were found liable for constitutional violations. The defendants cite no law for their position because there is none. Wishing does not make it so. The only way Aiken and/or Glantz could possibly avoid liability in this case would be to convince the jury their lies are truth, which Plaintiff sincerely believes is quite unlikely.

## III. CONCLUSION

For the foregoing reasons and authority of law, Defendants' Motion for Summary Judgment in this case must be DENIED.

Respectfully submitted,

AFA2128

______________________________

Anita F. Alberts Esquire ID # 28086
Counsel for Plaintiff Dee Barrett
The Atrium Suite 2 West
301 South Main Street
Doylestown PA 18901
(215)340-0700
FAX (215)340-2747

## CERTIFICATE OF SERVICE

Anita F. Alberts Esquire hereby certifies that on the day stated below a true and correct copy of the foregoing Answer Opposing Summary Judgment and Supporting Memorandum of Law was served to counsel for defendant at the address below by First Class Mail, Postage prepaid:

Sidney L. Gold Esquire
1835 Market St. Suite 515
Philadelphia PA 19103

__________________________(Date) ________________________________________
Signature