IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES (DEE) BARRETT | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER | : | NO. 02 -cv-4421 |
| OF COMMERCE, INC.; JOHN J.(BUD) | : | |
| AIKEN, AND MICKEY GLANTZ | : | JURY TRIAL DEMANDED |

<u>PLAINTIFF'S PRETRIAL MEMORANDUM</u>

**I. NATURE OF THE ACTION AND JURISDICTION**

Jurisdiction is premised upon 42 U. S.C. § 1332, Diversity Jurisdiction. Plaintiff, Dolores Barrett, is a citizen of the State of New Jersey as of filing suit in July 2002. Defendants are all citizens of Pennsylvania, where Plaintiff was employed from May 1990 until October 2000. She brings this action under and pursuant to Article I § 28 of the Pennsylvania Constitution, the Pennsylvania Equal Rights Amendment (PERA) for illegal sexual harassment and retaliatory discharge for reporting the harassment of Defendants Aiken and Glantz.

**II. STATEMENT OF FACTS**

Plaintiff was Executive Director of the Chamber of Commerce for ten years, from May 1990 to October 2000. At hire John "Bud" Aiken was vice president of the Board and Plaintiff's supervisor. Building membership, running Chamber affairs, organizing events, and visiting Chamber members with Aiken were her job duties. On these visits Aiken touched Plaintiff's thighs when they were sitting down, and complimented her appearance and performance.

Around Christmas 1991 Aiken shocked Plaintiff with an unwanted kiss on the lips in the Chamber office during work hours; he claimed he was merely wishing her a merry Christmas. In 1992 Aiken was President of the Chamber and began assisting Plaintiff with bookkeeping

1

tasks as the Chamber had no bookkeeper.  In 1993 Aiken worked with Plaintiff more often, in computerizing Chamber records.  He inappropriately touched her, and when she told him to stop and pulled away, he laughed, belittling her.  She knew he was an alcoholic.  He kept wine in the office refrigerator and drank it.

In 1994 Aiken escalated his harassment of plaintiff, putting his fingers down the front of her blouse if she bent down, remarking, "Nice, nice. . ." He ignored Plaintiff's demands to get away from her.  In 1995 Plaintiff confronted him directly about his unwanted behavior; Aiken feigned ignorance.  About two weeks later he tried to put his hand down the front of her blouse and she pulled away and fell down, hurting her knee.  She said, "Bud, you have got to stop this! I don't want you to put your hand down my blouse!  Don't do that! I don't want you to do that! Do you understand what I am saying?"  Aiken apologized, said he was "just a friendly guy," or words to that effect.  For several weeks he behaved politely.

In 1995 Mickey Glantz became Chamber President.  He continually subjected Plaintiff to verbal abuse based on sex and her Italian heritage, calling her "Wop" and Italian bitch" and routinely asking whether she'd had sex.  Glantz, whose wife was Italian, said, "I know you [Italians] give good head."  He threatened to fire her and hire "a dumb blonde with big boobs who won't mind the way I talk" when she told him to stop. Glantz also claimed he was "joking."

In 1996 Aiken told Plaintiff his wife would not have sex with him and began touching her again.  She objected and told him to see a marriage counselor.  In April 1996 she wrote a formal letter of complaint to him, stating she wanted to believe him when he said he was her "dear friend" and liked their business friendship but he must stop trying to rub against her and touch her breast, she did not believe he was kidding, and it made her uncomfortable.

2

In February 1998 Plaintiff wrote to Glantz stating she did not appreciate being called a "wop bitch" and being ridiculed for being Italian. In March 1998 she wrote to Glantz about his "sexual remarks" and copied a lawyer she had consulted. He became more abusive. He said "You have a big ass. Do you take it up the ass?" Aiken, who heard some of these remarks, did nothing to help, though he claimed to be her friend.

In May 1998 Aiken wrote a strong letter to the Chamber Board supporting Plaintiff's request for a salary increase. In August 1999 Jay Wischum, then Chamber President, wrote Plaintiff a glowing performance evaluation letter ending with ". . .you are the <u>backbone</u> . . .as well as the <u>heart</u> and <u>soul</u> of this organization, and I for one am proud to be President of an organization tat enjoys the blessings of your leadership. . . .you are The Greater Hatboro Chamber of Commerce." In Fall 1999 Glantz's conduct grew more offensive. When she objected he said, "I will talk to you, my wife, and to my secretary any way I want."

In November 1999 after the Chamber Christmas parade Aiken offered to help Plaintiff put parade paraphernalia away in the office closet. Plaintiff knelt on the floor and turned to Aiken, expecting him to hand her something to be put away. Instead Aiken stood there with his fly open, massaging his erect penis. He said, "You want some of this?" and Plaintiff hit him above the knees, pushing him away and screaming "Get the F_____ out of here! I'm sick of this! Get out! I'm going to tell your wife and Jim [her husband] about this!" Aiken left. He stayed away from the office for nearly a year.

In late December 1999 or ealy January 2000, Plaintiff took checks to Glantz's office for his signature. He saw her new car and asked. "Oh, what did you do to get that? Get down on your knees and give Jim a blow job?" His verbal abuse continued during 2000.

3

In October 2000 the Chamber claimed it was "reorganizing" its one-person office, claiming she had done so well growing the Chamber that her job was "too big for one person." and she would therefore be demoted to "Chief Marketing Director" at half pay ($15,000 / year). She refused the job. She also refused to sign a "Separation Agreement" promising not to sue. She was constructively discharged. Aiken then took over Plaintiff's job, as "Chief Operating Officer," with a full time secretary. Plaintiff's replacement by Aiken was retaliation for her refusal of Aiken's advances and rejection of Glantz's abuse. Aiken was paid more than Plaintiff's $30,000 salary without benefits Aiken was paid $40,000 including benefits, plus secretary.

After Plaintiff's discharge 24 volunteer Parade Marshals of the Hatboro Chamber resigned with a statement protesting Plaintiff's forced resignation and refusing, as she did, to work for half salary, and stating, ". . .we are all resigning because of what was done to Dee."

Defendants now claim Plaintiff was fired for poor performance. They deny every fact in the case, [1] claiming Plaintiff was not offended because the parties attended social events.

## III. DAMAGES CLAIMED

| | |
|---|---|
| **Compensatory Damages, Wage Loss**[2] | **$15,000.** |
| **Compensatory Damages, Emotional Distress** | **$30,000.** |
| **Compensatory Damages, violation of rights** | **$30,000.** |
| **Counsel Fees & Costs including Trial** | **$80,000.** |
| **Total** | **$155,000.** |

**Note: At settlement conference November 2004 Plaintiff's demand was $100,000. No offer was made. Defendants' Motion for Summary Judgment is pending.**

---

[1] Glantz admits telling Plaintiff to "Go F_____ herself " once, on the phone, and being made to apologize.
[2] Plaintiff secured employment in New Jersey six months after discharge, at a higher rate of pay. She has mitigated.

4

IV. PLAINTIFF'S TRIAL WITNESSSES

All witness are fact witnesses.  Plaintiff has not retained any expert witnesses.

    **1. Plaintiff Dolores Barrett:** Will testify consistent with Complaint, deposition, and Responses to defense summary judgment motion.

    **2. Frances Rambo:** Former wife of Deft. Glantz.  Will testify to Glantz's verbal abuse of Plaintiff from personal observation.

    **3. Judge Gloria Inlander:** Member of Chamber Board during purported 2002 "reorganization" and also serves as local District Justice.  She will testify to Plaintiff's integrity and community spirit and her concern she would lose her job if she made public the ongoing harassment of Aiken and Glantz.  She will describe her opposition to the 2002 "reorganization" and recognition of the retaliatory discrimination underlying the process.

    **4. Jean Heubach:** Volunteered to assist Plaintiff with Chamber events, observed Aiken's touching Plaintiff's knees, arms, shoulders, kissing her, and observed Plaintiff's reaction and his anger when she told him to stop.  Was present when Aiken talked about sex, felt uncomfortable.  Saw Plaintiff take the blinds off the office windows to allow people to see inside the office when he was there with her.  Heard Glantz's verbal sexual assaults.  She stopped going to the office.  She was told by Aiken's secretary that Plaintiff was fired by the Chamber.

    **5. James Barrett:** Pltf's husband.Volunteered as Chamber's computer consultant, trained Plaintiff to use the computer, describes whole family's involvement to help Dee.  Saw she had been crying many times when he came home from work, she did not reveal the nature of the harassment.  Will describe his wife's separation from her job, how he learned what his wife hid from him, and why she hid Aiken's and Glantz's abuse until they took her job from her.

    **6. Michael DiPalantino:** Plaintiff's son.  Was aware of Plaintiff's problems with Aiken.  Volunteered on the Parade Committee. Aware that Plaintiff kept her harassment problems from Mr. Barrett.Aiken asked Michael to invite him to his wedding, which he did along with others connected with the Chamber. Shocked when Aiken took her job.

    **7. Beverly Miller:** Member of Chamber's Board.  Familiar with Plaintiff's performance, and recommended Plaintiff for the job she obtained in April 2001 with the Greater Wildwood Hotel-Motel Assn. in NJ.  Was board member when Plaintiff was let go.

    **8. Ruth Bernstein:** From June 1995-March 1999 worked un office adjacent to Chamber.  Saw Plaintiff on a daily basis.  Plaintiff was in her office crying after Glantz's verbal abuse, and reviewed Plaintiff's memo to Glantz before it was sent.  Glantz made uncouth and inappropriate remarks to her as well.

    **9. Peggy Peak:** Worked with Plaintiff in Chamber office. Heard Aiken remark about Plaintiff's appearance, clothing, and her breast.  Heard Aiken say, "Nice, nice," saw him put his hand on Plaintiff's leg, heard Plaintiff tell him to knock it off. Aiken asked her personal questions

5

and came to her house to sell her life insurance; Aiken came up behind her and put his hands on her breast, tried to kiss her, and was difficult to rebuff.  Asked her for oral sex, told her to say nothing to Plaintiff.  She got him out of her house and called Plaintiff.  Next day Plaintiff called Aiken at his office and threatened to tell Mrs. Aiken unless he stopped.  This stopped him for 7 months.  Aware of Glantz's abuse, Aiken's touching and harassment.

  **10. Janan Radosin:**  Formerly employed by Bud Aiken and experienced unwanted touching by him, when she was in high school. Worked in Aiken's home office. She does not know Plaintiff, but contacted counsel when she saw a news story about this case.  Aiken asked her to go out with him; she refused. Finally, he touched her again and she shouted at him, and said, "I don't want you to touch me anymore! I'm sick of you putting your hands on me!" and walked out. Was let go the following day. Came forward because she expected Aiken would deny Mrs. Barrett's allegations, and does not want him to get away with it this time.

  **11. Cathy Fullam:** Accountant, Chamber member of board; will testify as at deposition.

  **12. Marshall (Mickey) Glantz:**  May testify consistent with his deposition.

  **13. John Wischum:**   Former Chamber president**.** Wrote 1999 glowing evaluation; will testify consistently with deposition about Aiken taking Plaintiff's job.

  **14. John (Bud) Aiken:** Plaintiff's harasser, took her job after he exposed himself to her and she threw him out of the office.  Will testify consistently with deposition.

  **15. Elaine Beck:** Former employee of Aiken.  Was harassed, touched by him.

**Plaintiff reserves the right to call any witnesses listed by defendants.**

**IV. PLAINTIFF'S TRIAL EXHIBITS**

1. Unsigned Separation Agreement from Hatboro Chamber of Commerce October 2000

2. Plaintiff's April 10, 1996 letter to Bud Aiken

3. Plaintiff's March 18, 1998 letter to Mickey Glantz

4. Plaintiff's February 12, 1998 letter to Mickey Glantz

5. 1993 Hats Off to Bud Aiken article written by Plaintiff

6. Plaintiff's 10/1/97 letter to Bud Aiken, Aiken memo to Plaintiff 10/10/97

7. Letters from John Wischum to Dee Barrett, 1998 (undated) and August 31, 1999

8. Statement of Janan Radosin, 8/28/03

9. Job Offer letter 8/8/2000 J. Wischum to J. Aiken for Dee Barrett's job

10. Two E-mails dated 10/19/00 from J. Heubach to J. Aiken re: Barrett

11. Letter 8/8/94 Dee Barrett to J. Aiken re: friendship

12. Aiken Memo 5/18/98 to McDowell, Wischum re: Barrett review (2p.)

13. Parade Marshal Resignations after Plaintiff lost job to Aiken

14. Aiken "Documentation for Sexual Alligations (sic)" (Aiken dep. Ex. #13)

15. Police Report by Aiken against James Barrett (Aiken dep. Ex. #14)

16. 2004 Financial Report and 2004 Tax Return of Hatboro Chamber

17. March 3, 1998 memo from Dee Barrett to Mickey Glantz

18. Chamber Equipt. Recommendation letter to Wischum, McDowell from J. Barrett

19. May 18, 1998 letter from Dee Barrett to Jay & Bob

20. Letters of support for Dee Barrett from J. Bethard and Mike Foley, 5/18/98

21. Letter dated 9/26/00 Dee Barrett to Jay Wischum re: Bd. Development Comm.

22. Letter dated 8/1/00 from Dee Barrett to Jay re:Barbara Davis

23. May 21, 1998 job review letter from Dee Barrett to Jay & Bob

24. Office memos dated 4/25/97, 6/18/97, 7/14/97 Dee Barrett to M. Glantz

**Plaintiff reserves the right to utilize any exhibits listed by defendants**

**V. ESTIMATE OF TRIAL TIME:** Plaintiff's case: two days; Total case 3 days

**VI. COMMENTS REGARDING LEGAL ISSUES:** Summary Judgment motion pending.

    Respectfully submitted,

    AFA2128

    _____
    Anita F.Alberts, Counsel for Plaintiff
    301 South Main Street Ste. 2 W
    Doylestown PA 18901
    (215) 340-0700; FAX (215)340-2747

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES (DEE) BARRETT | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER | | NO. 02 -cv-4421 |
| OF COMMERCE, INC.; JOHN J.(BUD) | : | |
| AIKEN, AND MICKEY GLANTZ | : | JURY TRIAL DEMANDED |

**CERTIFICATE OF SERVICE**

ANITA F. ALBERTS ESQUIRE hereby certifies that a true and correct copy of Plaintiff's

Pretrial Memorandum was served to counsel for defendants at the address below by First Class

Mail, on the date written below.

        Sidney L. Gold Esquire
        Sidney L. Gold Associates
        Eleven Penn Center
        1835 Market St. Suite 515
        Philadelphia PA 19103


_____(date)              _____