IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 02-4421 |
| **THE GREATER HATBORO** | : | |
| **CHAMBER OF COMMERCE, INC., et al.,** | : | |
| Defendants. | : | |

Tucker, J.                                                                                                                                            August 19, 2005

**MEMORANDUM AND ORDER**

Presently before this Court are Defendants' Motion for Summary Judgment (Doc. 23) and Plaintiff's Memoranda in Opposition (Docs. 25-27). For the reasons set forth below, the Court will deny Defendants' motion for summary judgment.

**I. FACTUAL BACKGROUND**

From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows. Plaintiff, Dolores Barrett ("Barrett"), was an employee of the Greater Hatboro Chamber of Commerce (the "Chamber") for approximately ten (10) years. At the time of Plaintiff's hiring, Defendant John Aiken ("Aiken") was the Vice President of the Chamber Board and Plaintiff's supervisor. Plaintiff's duties included building membership, running the Chamber's affairs, organizing events, and accompanying Defendant Aiken on his visits with Chamber members. On these visits, Plaintiff alleges that Defendant Aiken would touch her thighs when they were sitting down and compliment her appearance and performance.

Around Christmas 1991, Plaintiff alleges that Defendant Aiken inappropriately kissed her on the lips in the Chamber's office during work hours. In 1993, Plaintiff alleges that she began to work with Defendant Aiken more frequently in computerizing accounting records. During this time, Defendant Aiken continued to touch her inappropriately. Plaintiff objected on these occasions and asked Aiken to stop, and pulled away. Instead of Defendant Aiken honoring Plaintiff's request, he would laugh and belittle her. Plaintiff alleges that the harassment continued throughout 1994.

In 1995, Plaintiff claims she attempted to formally discuss with Defendant Aiken his harassing behavior, but he refused. Approximately two weeks later, Defendant Aiken came into Plaintiff's office and suddenly tried to put his fingers down the front of her blouse. Plaintiff contends that she was shocked and pulled away quickly. Plaintiff asked him to stop, but Defendant Aiken allegedly responded by saying that he was "just a friendly guy who liked to kid around." The next incident occurred in 1996, when Defendant Aiken began touching Plaintiff again. Plaintiff claims that Defendant Aiken told her that his wife would not have sex with him. Plaintiff told Aiken that he and his wife needed to see a marriage counselor.

After the Christmas parade in 1999, Defendant Aiken offered to help Plaintiff put away the Christmas signs, posters, and parade paraphernalia. Plaintiff knelt on the floor to move things around in the closet and when she turned around Defendant Aiken stood before her with his pants unzipped and his penis exposed, massaging himself. Plaintiff hit him above the knees, pushed him away and shouted at Aiken to get out. Plaintiff also threatened to tell Aiken's wife about the incident and her husband. Thereafter, Defendant Aiken stopped coming to her office.

Plaintiff also had encounters with Defendant Glantz as well. In 1995, Glantz became

President of the Chamber Board. Plaintiff alleges that the harassment by Defendant Glantz started after he became President. Plaintiff claims that Defendant Glantz called her a "Wop," and routinely asked her whether she had sex the night before. Plaintiff alleges that Defendant Glantz called her an "Italian bitch" and compared her to his wife, who was also Italian. Thereafter, Plaintiff attempted to discuss Defendant Glantz's comments and his conduct with him, but he erupted into an abusive shouting tirade, wherein he also threatened to fire her. Subsequently, Glantz claimed he was only joking.

Around March 1998, Plaintiff wrote a formal complaint to Defendant Glantz regarding his verbal abuse and his conduct. After her formal complaint, Plaintiff claims Glantz became more abusive. Thereafter, Plaintiff went to Defendant Glantz's place of business to have him sign checks for the Chamber's bills. After Plaintiff left, Defendant Glantz called her and made sexually offensive remarks to her. Plaintiff contends that Aiken frequently heard Glantz's remarks but Aiken did not take any actions himself. In the Fall of 1999, Plaintiff alleges that Defendant Glantz's behavior became more offensive. Plaintiff told him that she did not appreciate the way he talked to her, and when he was not responsive, Plaintiff threatened to go to the Board of Directors if he did not stop his harassing ways.

Late December 1999 or early January 2000, Plaintiff alleges that she took several checks to Defendant Glantz's office for his signature. Defendant Glantz noticed her new car and made a sexually inappropriate comment to her. Plaintiff alleges that Glantz continued to harass her through 2000. Around October 2000, the Chamber Board advised Plaintiff that she would be demoted because she had "grown the Chamber" and the job is "too big for one person." Thereafter, Plaintiff learned that Defendant Aiken would take over her administrative duties, and the Chamber Board

offered her a job as a chief marketing director for half the salary, or $15,000 a year. The Chamber Board gave Plaintiff two choices: (1) sign a voluntary separation agreement, or (2) be involuntarily discharged. Plaintiff did not accept the job demotion at half pay, and she was involuntarily discharged. Plaintiff contends that the Chambers never created or filled the position of chief marketing director and that the position was a ploy to terminate her.

As a result of these events, Plaintiff filed the present action claiming violations of the Equal Rights Amendment to the Pennsylvania Constitution (the"PERA"), Pa. Const. Art. 1, § 28, and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq*. Defendants moved to dismiss both of Plaintiffs' claims. The Court granted the motion to dismiss as to the PHRA claim and denied the motion to dismiss the PERA claim. Defendants now move for summary judgment on the PERA claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under the governing law. *Id*.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts must await trial. *Id*.

### III. DISCUSSION

**A. Subject Matter Jurisdiction**

Plaintiff Barrett attempts to invoke the jurisdiction of this Court through diversity of citizenship.[1] *See* 28 U.S.C. § 1332. Defendants challenge diversity of citizenship, claiming that the parties in this case are all citizens of Pennsylvania, and therefore not diverse. Defs.' Mem. at 3.

---

[1] Section 1332 grants District Courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000...and is between...Citizens of different States." 28 U.S.C. § 1332.

According to Defendants, Plaintiff Barrett manufactured diversity by falsely claiming to be a New Jersey citizen. Defs.' Mem. at 4. Plaintiff owns homes in both Pennsylvania and New Jersey. Defendants contend that Plaintiff's New Jersey home is a vacation home and not her primary residence. In April 2001, Plaintiff became the Executive Director of the Greater Wildwood Hotel Motel Association. Pl.'s Mem. at 4,7. Plaintiff contends that at that time, her New Jersey home became her permanent residence. In diversity cases, district courts must look at the citizenship of the parties at the time of the commencement of the action. *Brough v. Strathmann Supply Co.*, 358 F.2d 374 (3d Cir. 1966). Plaintiff filed this action on July 3, 2002. The Court must determine whether on that date, she was a New Jersey citizen.

The Court finds that the Plaintiff was a New Jersey citizen at the time she filed this action. Change of citizenship is determined by a party's intent to establish domicile in the new state. *Krasnov v. Dinan*, 465 F.2d 1298, 1300-01 (3d Cir. 1972) (citation omitted). To change domicile, a person must (1) have a physical presence in the new jurisdiction and (2) have the intent to remain there indefinitely. *Krasnov*, 465 F.2d at 1300-01. The "vague possibility of eventually going elsewhere," or the possible action of "returning whence one came" are irrelevant. *Gallagher v. Philadelphia Transp. Co.*, 185 F.2d 543, 546 (3d Cir. 1950). (quotations omitted). The party's declarations, exercise of political rights, payment of taxes, house of residence, and place of business are all indicia of intent to establish domicile. *Id*. at 1301 (*citing* Wright Federal Courts § 26, at 87 (2d ed. 1970); *Mitchell v. United States*, 88 U.S. 350, 353 (1874)).

All of the *Gallagher* factors favor the Plaintiff's position. In April 2001, the time Plaintiff claims she changed her state citizenship, both Plaintiff and her husband were employed in New Jersey. Pl.'s Mem. at 4,7. Neither Plaintiff nor her husband have worked in Pennsylvania since that

date. *Id*. Plaintiff and her husband pay New Jersey state income taxes and have both of their automobiles registered and insured in the state of New Jersey. *Id*. at 3-4. Moreover, Plaintiff testified in her deposition of her intent to remain in New Jersey due to her husband's illness. *Id*. at 4-5. Therefore, Plaintiff has established an intent to establish domicile in New Jersey. Defendants' motion for summary judgment for lack of subject matter jurisdiction is denied.

**B. Pennsylvania Equal Rights Amendment Claim**

Plaintiff brings her state claim for discrimination under the PERA, which states that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. Art. 1, § 28. Defendants make two arguments in support of summary judgment. First, Defendants contend that they are entitled to summary judgment because Pennsylvania does not recognize a private right of action for damages for PERA violations. Defs.' Mem. at 6. Secondly, Defendants argue that the PHRA, 42 Pa. Cons. Stat. § Ann. 951 *et seq*, preempts a private cause of action under the PERA. *Id*. at 7-8. The Pennsylvania Supreme Court has not ruled on this issue and there is a split in this district as to whether such a cause of action exists. *Compare Ryan v. Gen. Mach. Prod.,* 277 F. Supp. 2d 585 (E.D. Pa. 2003) (refusing to recognize a private cause of action under the PERA for a claim of gender wage discrimination), *with Spirk v. Centennial Sch. Dist.*, 2005 U.S. Dist. LEXIS 2782 (E.D. Pa.. 2005) (holding that a private right of action for damages was available for gender discrimination under the PERA). Therefore, this Court must predict whether the Pennsylvania Supreme Court would recognize a private cause of action under the PERA, if it were presented with that issue.

It is clear to the Court that Plaintiff's claim should survive. When confronted with the same issue, the Third Circuit Court of Appeals predicted that the Pennsylvania Supreme Court would

recognize a private right of action under the PERA. *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir. 1990) (citations omitted) ("[w]e are of the view that a private right of action is available for cases of gender discrimination under the Pennsylvania ERA"). Specifically, the *Pfeiffer* court opined that "damages...may be available under the [Pennsylvania] ERA." *Id*. This Court agrees with the Court of Appeals and holds that Pennsylvania does recognize a private cause of action for damages under the PERA.

Furthermore, a claim under the PERA is not precluded by the PHRA as Defendants suggest. While the PHRA may prevent a plaintiff from bringing *common law* claims for discrimination, it does not address claims brought pursuant to the PERA. *See Imboden v. Chowns Communs.*, 182 F. Supp. 2d 453, 458 (E.D. Pa. 2002) (citations omitted). The voters of Pennsylvania ratified the PERA in 1971, sixteen years after the Pennsylvania legislature enacted the PHRA. *Id.* The Pennsylvania legislature could not have intended to preempt a right that did not exist at the time they considered the legislation. Consequently, the PHRA cannot act as a bar to PERA claims. Defendants' motion here is denied.[2]

## IV. CONCLUSION

For the reasons stated above, this Court will deny Defendants' Motion for Summary Judgment. Plaintiff has meet her burden to establish subject matter jurisdiction based on diversity of citizenship. Additionally, the Court finds that Plaintiff can state a claim for discrimination under the PERA against all of the named Defendants in this case. An appropriate order follows.

---

[2] Defendants also argue that individual Defendants Aiken and Glantz are entitled to summary judgment because there is no private right of action against individuals under the PERA. Defs.' Mem. at 8. This Court disagrees. There is nothing in the text of the PERA that precludes a claim for individual liability. *See Clark v. Amerisourcebegen Corp.*, 2005 U.S. Dist. LEXIS 1459 (E.D. Pa. 2005) (allowing a plaintiff to state a PERA claim against private, individual defendants). The Court has already held that a plaintiff can state a claim against individuals for PERA violations. Defendants' motion is denied.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 02-4421 |
| **THE GREATER HATBORO** | : | |
| **CHAMBER OF COMMERCE, INC., et al.,** | : | |
| Defendants. | : | |

**Tucker, J.**                                                                                   August 19, 2005

## ORDER

**AND NOW**, on this 19th day of August, 2005, upon consideration of Defendants' Motion for Summary Judgment (Doc. 23) and Plaintiff's Memoranda in Opposition (Docs. 25-27), **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **DENIED**.

BY THE COURT:

/S/ Petrese B. Tucker

_____

**Hon. Petrese B. Tucker, U.S.D.J.**

9