Not Reported in A.2d, 2003 WL 22319459
Briefs and Other Related Documents
    Only the Westlaw citation is currently available.Edward W. IHNAT, Plaintiff
v.
John A. POVER, Mark Battaline, William J. Bytzura and Metropolitan Life Insurance Company, Defendants
**No. GD94-17465.**

Aug. 4, 2003.

Kenneth R. Behrend, Pittsburgh, PA, for Plaintiffs.
William M. Wycoff, Kimberly A. Brown, Kevin P. Allen, Pittsburgh, PA, for Defendant Metropolitan Life Insurance Company.

*OPINION AND ORDER OF COURT DATED AUGUST 4, 2003*

WETTICK, J.

\*1 The issue that I address is whether there is a **right** to a **jury trial** for private actions brought under § 9.2 of the **Unfair Trade Practices** and **Consumer Protection Law** ("**Consumer Protection** Law", 73 P.S. § 201-9.2(a). FN1 This provision reads as follows:

> FN1. There are more than two hundred lawsuits pending in this court involving alleged improper sales **practices** of insurance companies. Through rulings issued in the *Ihnat v. Pover* litigation, I have decided numerous common legal issues which counsel have identified. These rulings apply to each of the insurance sales **practices** lawsuits. In this Opinion, I am addressing defendants' contention that plaintiffs' demands for a **jury trial** made in these pending lawsuits should be stricken.

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

The parties agree that a judge-rather than a jury-determines whether to award up to three times actual damages sustained, counsel fees, and any necessary additional relief. The dispute is over whether a judge or a jury determines whether to award actual damages



pursuant to the first sentence of § 9.2.

Under settled law, the General Assembly may enact legislation providing for a trial by jury for any cause of action. However, where legislation does not provide for a trial by jury, a statutory action shall be tried without a jury unless Article I, Section 6 of the Pennsylvania Constitution guarantees a jury trial.

Article I, Section 6 of the Pennsylvania Constitution requires a jury trial only where the common law provided for a jury trial in 1790. In determining whether a statutory action is governed by Article I, Section 6, a court must determine whether the causes of action residing in the legislation existed at the time the Constitution was adopted in 1790 and if so, whether there existed a right to a jury trial for these causes of action. See Mishoe v. Erie Insurance Co., 824 A.2d 1153 (Pa.2003), where the Court ruled that a party is not entitled to a jury trial in an action for bad faith against an insurer, codified in 42 Pa.C.S. § 8371, because the cause of action (a cause of action separate and independent from a claim on the insurance contract itself) did not exist at the time of the adoption of the Pennsylvania Constitution; Wertz v. Chapman Township, 559 Pa. 630, 741 A.2d 1272 (Pa., 1999), where the Court ruled that a plaintiff seeking monetary damages under the Pennsylvania Human Relations Act was not entitled to a jury trial because no cause of action for sexual discrimination existed in 1790; and Commonwealth v. One (1) 1984 Z-28 Camaro Coupe, 530 Pa.523, 610 A.2d 36 (Pa.1992), where the Court held that the owner of property subject to forfeiture under the Controlled Substances Forfeitures Act was entitled to a jury trial because there was a right to a jury trial in forfeiture actions in 1790.

*2 Plaintiffs do not argue that the General Assembly has granted a trial by jury. Plaintiffs claim that they are entitled to a jury trial under Article I, Section 6 of the Pennsylvania Constitution because of the nature of the statutory proceeding. According to plaintiffs, the private action under § 9.2 does not enlarge any common law causes of action, it only provides additional remedies for common law actions. Where common law causes founded in tort and contract are established, $9.2 permits the court, in its discretion, to award up to three times actual damages sustained and reasonable attorney fees.

I agree with plaintiffs that they would be entitled to a **jury trial** if § 9.2(a) only provided for a discretionary award of up to three times actual damages and counsel fees for common law causes of action. However, the primary purpose of the **Consumer Protection Law** is to provide broader **protections** to persons purchasing goods or services for personal, family, or household purposes ("**consumers**" than those **protections** provided by tort and contract **law**. The **Consumer Protection Law**-unlike tort and contract law-creates rules for **consumer** transactions that differ from the rules for commercial transactions because of the **consumer's** lack of bargaining power, lack of knowledge, and lack of sophistication. It identifies business **practices** which-while not constituting common law fraud-place the **consumer** at an **unfair** disadvantage; it bars their use; and it creates a private action for a **consumer** who loses money or property as a result of the use of these **practices**. FN2

FN2. Section 9.2(a) permits a **consumer** to recover any ascertainable loss of money or property as a result of the use or employment of any method, act, or **practice** declared unlawful by § 3 of the law (73 P.S. § 201-3). Section 3 declares unlawful twenty-one **unfair** methods of competition and **unfair** and deceptive acts or **practices** as defined in subclauses (i) through (xxi) of clause (4) of Section 2 (73 P.S. § 201-2(4)(i) through (xxi)) and regulations adopted by the Attorney General under § 3.1 (73 P.S. § 201-3.1) as may be necessary for the enforcement and administration of the Consumer Protection Law.

### SECTION 201-2(4)

Presently, there are twenty-one unlawful practices for which a private action under § 9.2 may be maintained. The following unlawful practices described in § 201-2(4) could not, by themselves, serve as the basis for any common law causes of action:

(xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;

(xiii) Promoting or engaging in any plan by which goods or services are sold to a person for a consideration and upon the further consideration that the purchaser secure or attempt to secure one or more persons likewise to join the said plan; each purchaser to be given the right to secure money, goods or services depending upon the number of persons joining the plan. In addition, promoting or engaging in any plan, commonly known as or similar to the so-caller "hain-Letter Plan" or "yramid Club." The terms "hain-Letter Plan" or "yramid Club" mean any scheme for the disposal or distribution of property, services or anything of value whereby a participant pays valuable consideration, in whole or in part, for an opportunity to receive compensation for introducing or attempting to introduce one or more additional persons to participate in the scheme or for the opportunity to receive compensation when a person introduced by the participant introduces a new participant. As used in this subclause the term "onsideration" means an investment of cash or the purchase of goods, other property, training or services, but does not include payments made for sales demonstration equipment and materials for use in making sales and not for resale furnished at no profit to any person in the program or to the company or corporation, nor does the term apply to a minimal initial payment of twenty-five dollars ($25) or less:

*3 (xvii) Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating:
(A) the identity of the seller;
(B) that the purpose of the call in to sell goods or services;
(C) the nature of the goods or services; and
(D) that no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for

the prize promotion;
(xviii) Using a contract, form or any other document related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action:
(xx) Failing to inform the purchaser of a new motor vehicle offered for sale at retail by a motor vehicle dealer of the following:
(A) that any rustproofing of the new motor vehicle offered by the motor vehicle dealer is optional:
(B) that the new motor vehicle has been rustproofed by the manufacturer and the nature and extent, if any, of the manufacturer's warranty which is applicable to that rustproofing;
The requirements of this subclause shall not be applicable and a motor vehicle dealer shall have no duty to inform if the motor vehicle dealer rustproofed a new motor vehicle before offering it for sale to that purchaser, provided that the dealer shall inform the purchaser whenever dealer rustproofing has an effect on any manufacturer's warranty applicable to the vehicle. This subclause shall not apply to any new motor vehicle which has been rustproofed by a motor vehicle dealer prior to the effective date of this subclause.

For a common law misrepresentation claim, the plaintiff must prove by clear and convincing evidence that there has been (1) a representation (which is material to the transaction at hand), (2) made falsely with knowledge of its falsity or recklessness as to whether it is true or false, (3) with the intent of misleading another into relying on it, (4) justifiable reliance on the misrepresentation, and (5) resulting in injury proximately caused by the reliance. *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa.Super.2002). Where the issue is concealment, the seller must intentionally conceal a material fact to deceive the purchaser. *Id.*

The Consumer Protection Law permits a plaintiff to recover damages caused by the following unlawful practices without meeting the requirements for common law fraud of materiality, scienter, and intention by the declarant to induce action: FN3

> FN3. Also, the Consumer Protection Law does not require proof by clear and convincing evidence.

(i) Passing off goods or services as those of another;
(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
*4 (iv) Using deceptive representations or designations of geographic origin in connection with goods or services;
(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
(vi) Representing that goods are original or new if they are deteriorated, altered,

reconditioned, reclaimed, used or secondhand;
(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

In *DiLucido v. Terminix International, Inc.*, 450 Pa.Super. 393, 676 A.2d 1237, 1241 (Pa.Super.1996), the Court said that the consumers were correct in their contention that they were not required to prove the elements of common law fraud to establish violations of (ii) and (v). However, consumers are not relieved of the burden of establishing a causal connection to or reliance on the alleged misrepresentation.

The only two practices that would appear to also form a basis for a common law fraud/misrepresentation cause of action are (xv) "nowingly misrepresenting that services, replacements or repairs are needed if they are not needed,"and the catchall provision (xxi) "ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

Prior to 1996, the catchall provision (then numbered (xvii)) referred only to engaging "n any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding,"and the case law held that the elements of common law fraud must be proven. *Prime Meats, Inc. v. Yochim*, 619 A.2d 769, 73 (Pa.Super.1993). In *Commonwealth v. Percudani*, 825 A.2d 743 (Pa.Cmwlth.2003), the Commonwealth Court ruled that the 1996 amendment to the section, to include "eceptive conduct,"meant that a plaintiff no longer had to prove the elements of common law fraud in order to state a cause of action under the catchall provision.

## ATTORNEY GENERAL REGULATIONS

The **Consumer Protection Law** (§ 201-3.1) authorizes the Attorney General to adopt such rules and regulations as may be necessary for the enforcement and administration of the **Consumer Protection Law**. A private action under § 9.2 may be brought based on these regulations, because § 201-3's definition of "nlawful acts or **practices**"includes **unfair practices** as defined in regulations promulgated by the Attorney General under § 3.1.

The purpose of the regulations is to provide additional **protection** to **consumers** where the conduct will not necessarily constitute an **unfair** method of competition or **unfair** act or **practice** under § 201-2(4). The Attorney General has adopted regulations pursuant to § 3.1 governing Automotive Industry **Trade Practices** (37 Pa.Code § 301.1 et seq.); Loan Broker **Trade Practices** (37 Pa.Code § 305.1 et seq.); and Dog Purchaser **Protection** (37 Pa.Code § 309.1 et seq.).

A section of the Automotive Industry **Trade Practices** governing advertising and sales presentations describes twenty-six **unfair trade practices** (§ 301.2), a section governing the manufacturer lists five **unfair trade practices** (§ 301.3); a section governing motor vehicle dealers lists ten **unfair** acts (§ 301.4); and a section governing repair shops (§ 301.5) lists eleven **unfair practices**. These are detailed regulations. Many mandate

specific disclosures that will permit **consumers** to make informed decisions. Most of the others bar conduct that would not be a basis for any common law causes of action.

While the other regulations governing loan brokering and dog sales **practices** are not as extensive, few, if any, of the **practices** defined as unlawful acts or **practices** could be reached by the common law.

*OTHER LEGISLATION*

In addition to conduct declared to be an **unfair practice** in § 201-2(4) of the **Consumer Protection Law** and conduct declared unlawful in regulations promulgated by the Attorney General, violations of other **consumer protection** legislation, which is not grounded in the common law, serve as a basis for a private action under § 9.2.

The following laws have provisions stating that a violation of this law shall be a violation of the **Consumer Protection Law**:

Automobile Lemon Law (73 P.S. § 1961); New Motor Vehicle Damage Disclosure Act (73 P.S. § 1970.8); Health Club Act (73 P.S. § 2175(a)); Credit Services Act (73 P.S. § 2190(a)); Plain Language **Consumer** Contract Act (73 P.S. § 2207(b)); Telemarketer Registration Act (73 P.S. § 2246(a)); Unsolicited Telecommunication Advertisement Act (73 P.S. § 2250.5(a)); and Fair Credit Extension Uniformity Act (73 P.S. § 2270.5(a)). The **practices** which these laws mandate in some instances and prohibit in other instances are not codifications of common law causes of action. They provide **protections** that the common law does not provide.

In addition, violations of other **consumer protection** legislation which does not expressly provide that such violations are deemed a violation of the **Consumer Protection Law** may also constitute **unfair trade practices**. See *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488, 494 n. 20 (Pa.Super.1987).

If § 9.2 of the **Consumer Protection Law** was intended to replace common law causes of action for which there is a **right** to a **jury trial**, possibly there would be a **right** to a **jury trial** for conduct coming within § 9.2 for which there was a common law **right** to **jury trial**. However, I need not address this issue because § 9.2 supplements-rather than replaces-any causes of action founded in the common law or other **consumer protection** legislation. The remedies of the **Consumer Protection Law** are not exclusive, but are an addition to other causes of action and remedies. *Wallace v. Pastore*, 742 A.2d 1090, 1093 (Pa.Super.1999). Thus, in a complaint seeking recovery under § 9.2 of the **Consumer Protection Law**, plaintiffs can include in other counts any common law causes of action for which there is a **right** to a **jury trial**.

If, in their **consumer protection** causes of action, plaintiffs had elected to utilize only the damage provisions of § 9.2 (i.e., they raise only common law fraud counts with separate claims under the **Consumer Protection Law** for three times actual damages and counsel fees if the common law fraud counts are decided in their favor), the role of the judge

would be limited to deciding whether to award additional damages and relief in the event that the jury rules in plaintiffs' favor on their common law causes of action. However, plaintiffs have not limited their claims under the Consumer Protection Law in this fashion. Their complaints include claims based on § 9.2 that do not require plaintiffs to establish each of the elements of common law causes of action. Since these are not common law causes of action, the Constitution does not provide for a jury trial.

*6 This ruling that plaintiffs are not entitled to a jury trial for § 9.2 claims is consistent with the only three rulings, of which counsel for the parties and I am aware, that have addressed the right to a jury trial in private actions under § 9.2.

In *Greiner v. Erie Insurance Exchange*, 2000 WL 33711041 (C.P.Phila.2000), Judge Herron ruled that the plaintiff had no right to demand a jury trial for her Consumer Protection Law claims. He offered the following explanation:
> The UTPCPL does not include a right to demand a trial by jury. Nevertheless, the Plaintiff argues that the UTPCPL does no more than codify common law fraud, for which the Pennsylvania constitution allows a plaintiff to demand a jury trial. This is not entirely correct. It is true that a common law action that allowed a jury trial prior to 1790 and that was codified after the ratification of the Pennsylvania Constitution may serve as a basis for a right to a trial by jury. See *Commonwealth v. One 1984 Z-28 Camaro Coupe*, 530 Pa. 523, 610 A.2d 36 (1992) (allowing jury trials for violations of the Controlled Substances Forfeiture Act because forfeiture cases had a common law basis that afforded the right to trial by jury); *William Goldman Theaters, Inc. v. Dana*, 405 Pa. 83, 93-94, 173 A.2d 59, 64-65 (1961) (permitting jury trials for violations of the Motion Pictures Control Act of 1959). However, courts have been "nable to characterize all the various claims under the UTPCPL as fraud or deceit." *DiLucido v. Terminix Int'l, Inc.*, 450 Pa.Super. 393, 400, 676 A.2d 1237, 1240 (1996). Indeed, a plaintiff need not prove the elements of fraud to establish violations of UTPCPL Sections 201-2(4)(ii) and (xvi), two provisions invoked by the Plaintiff here. *Id.*, 450 Pa.Super. at 401, 676 A.2d at 1241.
> Because the UTPCPL does not simply codify common law fraud and was not enacted until 1968, there is no UTPCPL-based action that existed at the time the Pennsylvania constitution was adopted. As a result, the Plaintiff has no **right** to demand a **jury trial** for her UTPCPL claims. At 7-8.

In *Commonwealth v. BASF Corp.*, 2001 WL 1807788 (C.P.Phila.2001), Judge Herron struck the plaintiff's demand for a **jury trial** as to the plaintiff's claims under the **Consumer Protection Law**, citing his ruling in *Greiner v. Erie Insurance Exchange*, *supra*.

*7 In *Oppenheimer v. York International*, 2002 WL 31409949 (C.P.Phila.2002), Judge Sheppard of the Common Pleas Court of Philadelphia issued an opinion which struck the plaintiffs' demand for a **jury trial** for their **Consumer Protection Law** Claims, citing Judge Herron's rulings that the **Consumer Protection Law** does not include a **right** to a **jury trial**.

In *Gabriel v. O'Hara*, *supra*, the Superior Court considered the relationship of § 9.2

private actions to common law trespass and assumpsit actions to determine whether private actions under § 9.2 are governed by the two year limitation period governing actions for fraud and deceit or by the six year catchall limitation.

There is language in the Court's opinion which supports defendants' position that the **Consumer Protection Law** reaches conduct which trespass and assumpsit causes of action do not reach. The Court stated:
> The UTPCPL supplements rather than supplants traditional common law remedies with *per se* liability for a variety of **unfair trade practices**. 534 A.2d at 491 (footnote omitted).

> Instead, the UTPCPL creates a civil action which is separate and distinct from appellants' other causes of action and for which the legislature provided no limitations period. *Id.* at 495.

The *Gabriel* opinion (*id.* at 496) also quoted the following language of the Arizona Supreme Court in *Murry v. Western American Mortgage Co.*, 124 Ariz. 387, 604 P.2d 651 (Ariz.1979):
> ... the act creates a new liability. Although the act renders illegal the use of fraud in connection with the sale of merchandise, the elements of a claim for relief are not necessarily identical to those of a common law fraud action. Since the Consumer Fraud Act creates a cause of action separate from common law fraud, an action commenced thereunder must be brought within one year as [the catchall statute] requires. *Id.* at 654.

However, elsewhere in the *Gabriel* opinion, the Court stated that the Consumer Protection Law "mbraces actionable conduct which sounds in assumpsit as well as trespass and which parallel actions upon contracts as well as those arising in tort." 534 A.2d at 495 (footnote omitted).

In deciding what limitation period should apply, *Gabriel* did not need to (and did not) decide whether the private action under § 9.2 includes practices that are in addition to assumpsit or trespass claims. It ruled that the six year limitation period applied because not all claims brought under § 9.2 could be characterized as either tort (two years) or contract (four years).

In summary, the primary purpose of the Consumer Protection Law is to provide broader protection to consumers than protections afforded through common law trespass or assumpsit actions. Consequently, Consumer Protection Law causes of action will be tried by a judge, rather than a jury. However, if the causes of action under the Consumer Protection Law are limited to claims for triple damages and counsel fees in the event the plaintiff recovers under separate common law causes of action that also come within the scope of $9.2, a trial judge's responsibility for the Consumer Protection Law claims will be limited to determining whether the plaintiff who prevails on his or her common law claims before a jury should receive enhanced damages and counsel fees. FN4

FN4. In this Opinion, I am not considering how a court will try cases with a common law fraud cause of action and with a claim under § 9.2 that is not limited to common law fraud.

*8 For these reasons, I enter the following Order of Court:

### ORDER OF COURT

On this *4* day of August, 2003, it is ORDERED that plaintiffs' demands for a jury trial for causes of action based on § 9.2 of the Consumer Protection Law are stricken. Counsel for Metropolitan Life Insurance Company shall furnish copies of this Opinion and Order of Court to other counsel.

Pa.Com.Pl.,2003.
Ihnat v. Pover
Not Reported in A.2d, 2003 WL 22319459

Briefs and Other Related Documents (Back to top)

•2002 WL 32805713 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Plaintiffs' Motion for Reconsideration of Orders Granting Preliminary Objections Re: Fiduciary Duty Filed on Behalf of the Defendant Insurance Sales Representatives in the Life Insurance Sales Practices Litigation (Apr. 03, 2002)
•2002 WL 32805714 (Trial Motion, Memorandum and Affidavit) Supplemental Brief in Support of Plaintiffs' Motion for Reconsideration of Orders Granting Preliminary Objections Re: Fiduciary Duty (Jan. 10, 2002)

END OF DOCUMENT