IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES (DEE) BARRETT | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER | : | NO. 02 -cv-4421 |
| OF COMMERCE, INC.; JOHN J.(BUD) | : | |
| AIKEN, AND MICKEY GLANTZ | : | JURY TRIAL DEMANDED |

### STATEMENT OF JANAN N. RADOSIN

JANAN N. RADOSIN makes this statement on the basis of her own knowledge and experience, at the request of Anita Alberts Esquire, counsel for Plaintiff Dolores Barrett:

1. I have never met or spoken to Dolores Barrett. I am making this statement voluntarily at the request of her attorney, and I am not being paid.

2. I reside at 283 Runner Street, Jenkintown PA 19046. I saw a news article in the paper recently concerning this case, and contacted Ms. Alberts because I once worked for Bud Aiken and had some problems with him touching me, ~~somewhat similar to the incidents described in the newspaper article concerning this case.~~ *THIS was NEVER DESCRIBED IN ARTICLE JR I READ IN 8/22/03 INTELLIGENCER.*

3. I am now 45 years old and have been a licensed insurance broker for ~~18~~ years. *20 JR* Bud Aiken was an insurance broker and hired me to do secretarial work for him, in his home office, when I was 16 years old and in high school.

4. I was his only employee. Bud Aiken touched me frequently, mostly on my arm and shoulder. I hated when he put his hands on me. Once when I was working in his home office he called me from someplace and I could hear music. I asked him where he was, because it sounded like he was in a club. His response was to ask if I would ~~come meet him~~. I refused. *LIKE To GO DANCING WITH HIM SOMETIME JR*

*HE ASKED THIS ON MORE THAN ONE OCCASION – WHICH I REFUSED! JR*

PLAINTIFF'S EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOLORES (DEE) BARRETT          :
                                :
            V.                  :        CIVIL ACTION - LAW
                                :
THE GREATER HATBORO CHAMBER     :        NO. 02 -cv-4421
OF COMMERCE, INC.; JOHN J.(BUD) :
AIKEN, AND MICKEY GLANTZ        :        JURY TRIAL DEMANDED

## STATEMENT OF JANAN N. RADOSIN

JANAN N. RADOSIN makes this statement on the basis of her own knowledge and experience,

at the request of Anita Alberts Esquire, counsel for Plaintiff Dolores Barrett:

    1. I have never met or spoken to Dolores Barrett. I am making this statement voluntarily

at the request of her attorney, and I am not being paid.

    2. I reside at 283 Runner Street, Jenkintown PA 19046. I saw a news article in the paper

recently concerning this case, and contacted Ms. Alberts because I once worked for Bud Aiken

and had some problems with him touching me, ~~somewhat similar to the incidents described in~~

~~the newspaper article concerning this case.~~    *THIS WAS NEVER DESCRIBED IN ARTICLE JR*
*I READ IN 8/22/03 INTELLIGENCER.*

    3. I am now 45 years old and have been a licensed insurance broker for ~~18~~ years. Bud
                                                                        *20 JR*

Aiken was an insurance broker and hired me to do secretarial work for him, in his home office,

when I was 16 years old and in high school.

    4. I was his only employee. Bud Aiken touched me frequently, mostly on my arm and

shoulder. I hated when he put his hands on me. Once when I was working in his home office he

called me from someplace and I could hear music. I asked him where he was, because it

sounded like he was in a club. His response was to ask if I would ~~come meet him.~~ I refused.
                                                            *LIKE TO GO DANCING*
                                                            *WITH HIM SOMETIME*
                                                                        *JR*

*HE ASKED THIS ON MORE THAN*
*ONE OCCASION - WHICH I REFUSED!*
                *JR*

PLAINTIFF'S
EXHIBIT
8

5. The situation with him touching me finally came to a head one day (around 1974) *Getting ready to leave JR* when he was sitting in his office chair. I was standing next to him, and he put his hand on my arm, for the final time. I jerked my arm away and he said, "What's the matter?" I said, strongly. "I don't want you to touch me anymore! I'm sick of you putting your hands on me!"

6. When I walked out, I realized Janet, Bud's wife, was in the kitchen at the stove and the office door was open so she probably heard all this. Bud's home office was in the converted garage right next to the kitchen.

7. Next day, I was let go. Janet's eyes were all red when she told me they couldn't afford to keep me on. She looked as if she had been crying all night.

8. This was nearly 30 years ago, yet I remember it as clearly if it happened yesterday. I have held many jobs since I was 16, but never did I have any experiences such as those when I worked for Bud Aiken. I will never forget how he treated me.

9. I decided to give this statement because I don't want Bud Aiken to get away with it, this time. I suspect he will deny what Mrs. Barrett says. I admire her courage and want to support her, because it happened to me when I worked for him, and I lost my job when I tried to stop it.

10. This statement is made pursuant to 18 Pa. C.S.A. §4904 prohibiting unsworn falsification to authorities.

*Janan Radosen*
Signature

8/28/03 (Date)

# Hatboro Borough Police Major Incident & Complaint Report

| Complaint Number | Date Reported | Time Reported | Day of Week | How Reported | Received By |
|---|---|---|---|---|---|
| 00-004374 | 10/25/00 | 1000 hrs | Wednesday | Telephone | D-22 |

| Nature of Complaint or Incident Reported | Offense Code |
|---|---|
| **HARASSMENT BY COMMUNICATION** | 2410 |

| Incident Location | | Incident Date | Incident Time |
|---|---|---|---|
| 21 Orchard Avenue Hatboro PA | | 10-24-00 | 1834 hrs |

| Complainant/Victim | Phone (Home) | Phone (Work) |
|---|---|---|
| Bud AIKEN | (215)672-6264 | (215)956-9540 |

| Complainant/Victim Address | Age/Race/Sex/Ethnicity | Value Prop. |
|---|---|---|
| 21 Orchard Avenue Hatboro PA 19040 | W/M/NH/38 | N/A |

| Incident Reported By: | Report By Vict or Comp |
|---|---|
| | X |

| Reported By Address (If other than Comp./Vict.) | Phone (Home) | Phone (Work) |
|---|---|---|
| | | |

| Actor / Suspect / Arrested Subject | Date of Birth | Age/Race/Sex/Ethnicity |
|---|---|---|
| **James BARRETT** | 12-26-1944 | 55/Unknown |

| Actor/Arrested Subject Address | Phone (Home) | Phone (Work) |
|---|---|---|
| **2400 Karen Lane Hatboro (Upper Moreland Twp.) PA 19040** | (215)441-8894 | Unknown |

| Charges (NOT Section Numbers) | | Arrest Type |
|---|---|---|
| | DUI ☐ Warrant ☐ | Summ. ☐ |

| Vehicle Registration | State | Make | Model | Color | Year | Impound or Release |
|---|---|---|---|---|---|---|
| N/A | | | | | | |

| Vehicle VIN | Vehicle TIN | Misc. Identifiers |
|---|---|---|
| | | |

| Flash Msg. Info (Keys, Cards In Veh, Doors Locked) | Registered Owner | Insured (Yes/No) |
|---|---|---|
| | | |

| NIC Number | CID Number | Entered | By | Removed | By | Data Processing |
|---|---|---|---|---|---|---|
| | | | | | | ☐ Tape ☐ File |

| Reporting Ofc. | Officers Assigned | Press Info | | | | |
|---|---|---|---|---|---|---|
| SWOYER | SWOYER | ☐ Inq. ☐ Record ☐ Sprt. ☐ | | | **NO PRESS** | |

| OIC Review | Film Roll | DUI Evidence | Date/Time Transported | Officer | Lab Used |
|---|---|---|---|---|---|
| (initials) | | | | | |

**Brief Narrative**

On Wednesday October 24, 2000 at approximately 1000 hours Mr. Bud AIKEN telephoned the Hatboro police to report a harassing and threatening telephone call recieved at his residence. At approximately 1100 hours this date R/O spoke with Mr. AIKEN at the offices of the Hatboro Chamber of Commerce - 120 South York Road, Suite #2, where Mr. AIKEN currently serves as Interim Manager. Mr. AIKEN stated the following:

On Tuesday October 24, 2000 the Executive Director of the Hatboro Chamber of Commerce, one Delores ("Dee") BARRETT was terminated of her employment by Mr. GLANZ and Mr. WISCHUM, both of the Chamber of Commerce. Mr. AIKEN was then appointed to serve in his current capacity, effectively replacing Mrs. BARRETT. According to Mr. AIKEN, following her termination Mrs. BARRETT accused him (AIKEN) of exposing himself to her (BARRETT) ten (10) years ago, a charge which Mr. AIKEN adamantly denies. Mrs. BARRETT also accused Mr. AIKEN of exposing himself to eight (8) additional women, which AIKEN denies. Mr. AIKEN stated that he had a cordial and professional relationship with Mrs. BARRETT prior to October 24, 2000.

1

PLAINTIFF'S EXHIBIT 15

| Complaint Number | Date Report | Time Reported | Day of Week | How Reported | Received By |
|---|---|---|---|---|---|
| 00-004374 | 10/2./00 | 1000 hrs | Wednesday | Telephone | D-22 |

*Detailed Information*

At approximately 1834 hours October 24, 2000 Mr. AIKEN received a telephone call from one James BARRETT, Dee BARRETT'S husband. The above telephone call was received at Mr. AIKEN'S residence and was recorded by AIKEN on his digital answering machine. Mr. AIKEN played a copy of above message, recorded onto audio cassette by Mr. AIKEN, for R/O. On said cassette a subject identified as "Jim" can be heard using profanities towards Mr. AIKEN and threatening harm to same. The caller stated: "I'm gonna cut your (AIKEN'S) dick off and stick it in your ear", and that AIKEN should "look over his (AIKEN'S) shoulder tonight and tomorrow night". R/O retained the cassette, property receipt P00-004374 issued. The caller also accused Mr. AIKEN of exposing himself to his wife.

Mr AIKEN indicated to R/O that he does not want to prosecute or pursue the above matter , but that he wanted the incident documented by police in case he fell victim to violence in the future.

2                                                                                                      00-004374

*John Bethard*
*326 Lawton Road*
*Willow Grove, Pa. 19090*
*657-4972*

May 18, 1998

Mr. Jay Wischum
Mr. Robert McDowell
Hatboro Chamber of Commerce
P.O. Box 244
Hatboro, Pa. 19040

Dear Jay & Bob:

Dee Barrett does many things to help me put on a successful Christmas Parade every year. I have listed just the major things that she does.

1. She sends all committee members meeting notices
2. She takes all minutes at the committee meeting.
3. Sends out all parade announcements to parade participants. Coordinates list with Buxmont printing and keeps our list updated all year.
4. Invites all delegates who will participate in parade. (compose all letters and correspondence that goes out for parade.)
5. Works with Public Spirit to find a winner for Name The Parade ever year. (When we do the judging she has all names ready for each committee member. She also helps pick the winner.)
6. She was the major link in obtaining our Parade Sponsor. (She created a proposal and helped to put on the presentation to the Public Spirit.)
7. Dee and her family & friends work the parade on parade day.
8. Dee also prepares all food and beverage for the parade marshal's and all who help with the parade.
9. Does all news releases that go on T.V., radio and newspapers.
10. Helps Parade Chairman to line up the parade.
11. Answers the many, many phone calls related to the parade.
12. Sends out all parade confirming
13. Helps to secure parade participants. She secured our Parade Marshall for the 1998 parade at no cost to the Chamber.
14. Does all certificates for every parade participant.

I have found Dee always to be a willing worker. No job is to small or to large. She does the job well and does it in a timely manner. Dee is a real "Cog in the Wheel" in helping the parade to be as successful as it is every year. "We need her."



PLAINTIFF'S
EXHIBIT
20(b)
tabbies

*The Christmas Parade takes a lot of time to put together. (6 to 8 months.)  Our parade committee works hard in making the parade the big success it is every year.  I am happy to say that Dee is a big part of it.*

*I hope that this will help in giving Dee a fair review and the raise that she deserves.  If you should have any questions, please let me know.*


*Sincerely,*

*John Bethard*
*Parade Chairman*

# ASSOCIATION & CHAMBER OF COMMERCE GROUP INSURANCE PLANS

DIVERSE TECHNICAL LINES, INC. 2 RED BARN MALL • 120 S. YORK ROAD • HATBORO, PA 19040 • (215) 674-9400 • (800) 734-9400 • FAX 674-0400

May 18, 1998

Robert McDowell
Jay Wischum
Hatboro Chamber of Commerce
P.O. Box 244
Hatboro, PA   19040

Dear Sirs:

This letter is to tell you about the good business relationship that we at DTL have with Dee Barrett, Executive Director of the Hatboro Chamber.  We work hard to have a good relationship with all of the Chambers of Commerce that we work with and Dee has always been most cooperative and pleasant.

Dee's efforts have helped to maintain an accurate membership listing for the Hatboro Chamber and we always appreciate the referrals she sends to us.

Dee's warm, friendly manner makes her a pleasure to work with.

Sincerely,

Michael J. Foley, RHU
Vice President


PLAINTIFF'S EXHIBIT 20 (a)

## Parade Marshal Resignations

We the undersigned hereby tend our resignations as volunteer Parade Marshals of the Greater Hatboro Chamber of Commerce. This action is in formal protest to the manner in which the Chamber secured the resignation of Dee Barrett as Executive Director of the Chamber.

Dee was given the option of having her salary reduced in half or resigning her position. This was done so the Chamber could give one of their "Good Old Boys", Bud Aiken, her position. Bud had recently sold his business and was bored.

We also refuse to work for half of our former salary, which was nothing, and in our opinion "nothing" is what the residents of Hatboro expect from Bud. We all volunteered because we believed in what Dee was doing for Hatboro, just as we are all resigning because of what was done to Dee.

PLAINTIFF'S EXHIBIT 13

## Parade Marshal Resignations

Russell D. Vann

Agnes Jaine

Leo Jordon

## SEPARATION AND GENERAL RELEASE AGREEMENT

THIS SEPARATION AND GENERAL RELEASE AGREEMENT is made and entered into as of this        day of                 , 2000, by and between DEE BARRETT ("Barrett") and the GREATER HATBORO CHAMBER OF COMMERCE ("Chamber") in connection with the termination of Employee's employment.

WHEREAS, Barrett was employed by Chamber for several years; and

WHEREAS, Barrett's employment with Chamber terminated on October 24, 2000 (the "Termination Date").

THEREFORE, Barrett and Chamber agree that:

1.   Definitions.  As used in this Settlement Agreement:

   a.   Barrett:  "Barrett" shall mean "Dee Barrett".

   b.   Chamber:  "Chamber" shall mean the "Greater Hatboro Chamber of Commerce", whose principal place of business is located at PO Box 244, South York Road, Hatboro, PA 19040.

   c.   EEOC:  "EEOC" shall mean the United States Equal Employment Opportunity Commission.

   d.   Released Parties:  "Released Parties" shall mean Chamber, its present and former officers, directors, partners, subsidiaries, affiliates, and their associates, employees, agents, independent contractors, representatives, attorneys, insurers, and their respective heirs, representatives, administrators, executors, agents, successors, and assigns.

   e.   Agreement:  "Agreement" shall mean this Settlement Agreement.



PLAINTIFF'S
EXHIBIT
_____

2.    <u>Dee Barrett Representations and Warranties</u>.  Barrett hereby represents and warrants to the Released Parties that:

a.    <u>Read Agreement and Exhibits</u>.  She has read this Agreement and the exhibits to it in their entirety.  She has had the opportunity to review all aspects of this Agreement and its exhibits.  She fully understands all of the Agreement's provisions and their legal and practical effect.

b.    <u>Time to Consider</u>.  Barrett acknowledges that she has read and understands the terms of this Agreement and its exhibits and that she has been advised to consult with an attorney before signing this Agreement.  Barrett further acknowledges that she has twenty-one (21) calendar days from **November 3, 2000**, to decide whether she wants to sign this Agreement and General Release and Covenant Not to Sue in the form of Exhibit 1, and has also been advised that she can revoke this Agreement and General Release and Covenant Not to Sue in the form of Exhibit 1 seven (7) calendar days after signing.  Any such revocation must be in writing addressed to Greater Hatboro Chamber of Commerce, PO Box 244, South York Road, Hatboro, PA 19040.  Barrett expressly waives the right of her attorney or attorneys to recover attorney fees from Chamber relating to and/or arising out of the prosecution or settlement of any and all claims against Chamber and/or any lawsuit or charge of discrimination that she may file relating to her employment or termination of employment.

c.    <u>Voluntary Act</u>.  She is signing this Agreement and a General Release and Covenant Not to Sue in the form of Exhibit 1 freely and voluntarily, without coercion of any kind, and with full knowledge and understanding of their contents.

d.    <u>No Reliance</u>.  In signing this Agreement and the General Release and Covenant Not to Sue in the form of Exhibit 1 she is not relying in any way on any statements, representations or promises made by the Released Parties or any agent, attorney or representative of the Released Parties, except as specifically set forth in this Agreement.

e.    <u>No Assignment or Transfer</u>.  She has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or right, or any portion thereof or interest therein, which she purports to release by the General Release and Covenant Not to Sue which she is delivering to the Released Parties.

f.    <u>Binding Effect</u>.  This Agreement and the General Release and Covenant Not to Sue that she is executing pursuant thereto and each and every provision thereof, are valid and binding upon her and her heirs, executors, legal representatives, administrators and assigns, and enforceable against Barrett, her heirs, executors, legal representatives, administrators and assigns in accordance with the terms of this Agreement and the Covenant Not to Sue.

g.    No Claims Filed. Except for a possible claim for unemployment benefits, she has not filed any other charges, complaints, grievances or other claims against any Released Parties in or with any federal, state or local court or agency.

h.    No Other Claims. She is aware of no claims or causes of action, except for the state unemployment benefits, that she has or might have against any Released Parties except those she is releasing and for which she is covenanting not to sue the Released Parties by the General Release and Covenant Not to Sue which she is delivering to Chamber.

3.    Documents and Chamber Property To Be Delivered to Chamber. After the execution of this Agreement by Barrett and Chamber, Barrett shall deliver to Chamber (in addition to a properly executed and notarized copy of this Agreement):

a.    A properly executed and notarized General Release and Covenant Not to Sue in the form of Exhibit 1 to this Agreement;

b.    All Chamber keys and/or credit cards in her possession;

c.    All Chamber equipment and property including Rolodex, membership lists, files, pictures, and any other items belonging to Chamber; and

d.    All Chamber computer equipment including all hardware, software, computer printouts, databases, disks, files, software methodologies, and recordings of any kind.

Page – 4 –

e.   All documents, notes, files and papers pertaining to the Borough Ball including but not limited to the band contract and nominations for the Borough Ball of 2001.

f.   All the framed Christmas parade posters and pictures previously hung on the walls of the Chamber's office.

g.   All Christmas parade marshall coats, and any other Christmas parade items, notes, and files.

4.   <u>Payments to Barrett</u>.  As soon as administratively possible but not before eight (8) calendar days after delivery by Barrett of the executed and notarized Agreement and all items required to be delivered in accordance with Paragraph 3 above (hereinafter "effective Date"), Chamber will pay Barrett severance pay equal to the payments she would have received as salary through **December 31, 2000**, including IRA contributions, subject to all normal payroll tax withholdings.  Chamber will make these payments to Barrett as they would have come due on her normal paydays.

In the event any additional tax liability is imposed on any Released Party by any taxing authority, including, but not limited to, the Internal Revenue Service or the Pennsylvania Department of Revenue, for its payment to Barrett, Barrett on behalf of herself, her executors, heirs, and assigns, agrees to pay promptly the liability and, to the extent not fully paid by Barrett, to indemnify, promptly reimburse, and hold the Released Parties harmless from any and all liability for such taxes, including any interest or penalties with respect to such taxes.

Money and other benefits provided under this Agreement will not increase the amount of any benefits Barrett is otherwise entitled to receive under Chamber's benefit plans and practices. Following execution of this Agreement, Barrett will accrue no additional benefits nor be entitled to any further benefits other than those provided in this Agreement.

1.  Unemployment Compensation Benefits.  Chamber agrees not to contest Barrett's application for unemployment compensation benefits relating to her termination of employment from Chamber.

2.  Agreement Not to File Additional Claims.  Barrett agrees that she will not file any complaints, charges, grievances, or claims of any kind against any Released Parties with any federal, state, or local court or agency based on any incidents, events, or facts which occurred prior to the execution of this Agreement and that, if any agency or court assumes jurisdiction of any such matter, Barrett will request that agency or court withdraw the matter and dismiss the charge, complaint, grievance, or claim.

3.  Indemnification.  As a further inducement to cause the Released Parties to enter into this Agreement, Barrett agrees to indemnify the Released Parties and hold them harmless from and against any and all losses, costs, damages and expenses, including but not limited to attorney's fees and court costs, incurred by any Released Party as a result of, or arising out of, any claim, charge, action or suit brought (or which remains pending) against any Released Party as a result of any claim or cause of action which Barrett purports to release

pursuant to the General Release and Covenant Not to Sue in the form of Exhibit 1 annexed to this Agreement, or as a result of, or caused in any way by, the fact that any representation or warranty made by her in this Agreement or any exhibit to it was false when made.

4.    No Reinstatement or Reapplication for Employment. Barrett agrees that she will not request or apply for re-employment with Chamber and hereby waives any right she might have to obtain reinstatement or employment with Chamber.

5.    Confidentiality. Barrett agrees that the terms of this Settlement Agreement are only of interest to the parties hereto and shall remain confidential. Accordingly, except as required by law and as necessary to enforce this Agreement, Barrett agrees that she will keep completely confidential the existence and terms of this Agreement.  Barrett will not disclose directly or indirectly or by implication any information concerning the existence of this Agreement or this Agreement's terms and amounts to any person other than her attorneys, accountants and spouse (where applicable) who shall have the same responsibility as Barrett to keep confidential the existence of and the terms of this Agreement. If either Barrett or Barrett's attorneys, accountants, or spouse (where applicable) disclose the existence or terms of this Agreement or General Release and Covenant Not to Sue in the form of Exhibit 1 to any person other than Barrett's attorneys, tax advisors or spouse, Barrett agrees to repay Chamber benefits provided under this Agreement; Chamber-paid severance, and Chamber's attorneys' fees and costs incurred by it to enforce

Page  –  7  –

the terms of this Agreement and General Release and Covenant Not to Sue in the form of Exhibit 1, including, but not limited to, the recover of Chamber-paid severance pay.

1.  Restrictive Covenants.

    a.  Nondisclosure Covenant. Barrett recognizes and acknowledges that as a result of her employment with Chamber, she developed and acquired valuable and confidential skills and information of a special and unique nature relating to such matters as the records of Chamber pertaining to sales, service, pricing, costs, customers, prospective or potential customers, suppliers, or any other information involving or affecting Chamber, or any systems, procedures, records, reports, computer printouts, databases, disks, software methodologies, recordings of any kind, manuals, papers, samples or equipment or method or any other information, used, obtained or prepared by Barrett or anyone else during and in connection with her employment, and any other service performed for or on behalf of Chamber (to the extent not generally in the public domain) (hereinafter collectively referred to as the "Confidential Information"). As a material inducement to Chamber to enter into this Agreement, Barrett covenants and agrees that she shall not, directly or indirectly, use, divulge, or disclose for any purpose whatsoever all or any part of such Confidential Information absent authorization in writing from the President of the Chamber.

Page – 8 –

b.  Non-Disparagement.  Barrett agrees she will not expressly or impliedly disparage Chamber, including Chamber's current, former, and future employees, officers, and directors, in any manner, either orally, in writing, or otherwise.

c.  Non-Disruption.  Barrett agrees that she will not destroy any Chamber property but will return the same to the Chamber forthwith and that she will not in any way disrupt or encourage any other person or entity to disrupt the activities, meetings and/or services being provided by the Chamber, nor will she contact members, officers, or board members, both past, present and future, to disparage the Chamber, or to disparage the Chamber members, officers or board members.

d.  Revision/Reformation of Covenants.  If a court of competent jurisdiction were to deem unreasonable any provision of Paragraph 10 of this Agreement, that court shall have the authority to revise the unreasonable provision so as to make it reasonable, and enforce Paragraph 10 of this Agreement as revised by the court.

e.  Remedies.  Barrett acknowledges that her compliance with Paragraph 10 of this Agreement will not work an undue hardship on her and that she will be able to earn a livelihood in her chosen occupation.  At the same time, Barrett acknowledges that if she repudiates or breaches any or all of the provisions in Paragraph 10 of this Agreement or threatens or attempts to do so, Chamber will suffer immediate and irreparable harm

to its goodwill and business, which harm will be substantial, but not precisely determinable, and therefore, such harm will not be compensable by damages alone. In the event of any breach or any threatened breach by Barrett of Paragraph 10 of this Agreement, Chamber, in addition to and not in limitation of any other rights, remedies, or damages available to Chamber at law or in equity, shall be entitled to obtain temporary, preliminary and permanent injunctions, and recover its attorneys' fees and costs, in order to prevent or restrain any such breach by Barrett or by any partner, agent, representative, employer, and/or any other persons acting, directly or indirectly, in concert or participation with Barrett, and Chamber shall not be required to post a bond as a condition for the granting of such relief. Chamber and Barrett hereby agree that any court of competent jurisdiction sitting in Pennsylvania shall have jurisdiction over them for purposes of enforcement actions under this Agreement.

2.    No Admission. It is further agreed that this Agreement is executed by the parties to compromise disputed claims and that neither it nor the payment delivered to Barrett pursuant to it constitutes, or shall be construed as, an admission of any violation of any law, order, ordinance, regulation or enactment, or of wrongdoing of any kind by any Released Party, and the Released Parties specifically deny any violation or wrongdoing. This

Page – 10 –

Agreement is entered into by the parties solely to avoid litigation and to end all controversies between them.

3. <u>Attorneys' Fees</u>. Except as otherwise expressly provided in this Agreement, each party to this Agreement shall bear its and her own costs and attorneys' fees. Barrett specifically waives any claim for attorneys' fees that she might have or might have had as a result of a charge filed with the EEOC.

4. <u>Applicability of Pennsylvania</u>. This Agreement shall be interpreted, applied, and enforced in accordance with Pennsylvania law. By executing this Agreement, Barrett and Chamber submit to the jurisdiction of the courts in the Commonwealth of Pennsylvania.

5. <u>Captions</u>. The captions or headings of the sections and subsections of this Agreement are included for the purpose of convenience only and shall not affect the construction or interpretation of any of the terms of the Agreement.

6. <u>Entire Agreement</u>. This Agreement and Exhibit 1 annexed to it, set forth the entire agreements between Barrett and the Released Parties and supersede any and all prior agreements and understandings between them, whether oral or in writing. This Agreement specifically includes all those agreements and understandings specifically incorporated by reference and reaffirmed by this Agreement and any covenants restricting post-employment solicitation of customers, competition and solicitation of employees and/or disclosure or use of confidential information. Neither the Agreement nor the documents to be delivered by the parties pursuant to it may be modified, amended, or revised

Page – 11 –

except in a writing signed by the party against whom any such modification, amendment or revision is sought to be enforced.

7.    <u>Severability</u>. If any portion or provision of this Agreement is deemed invalid or unenforceable by a court, then such portion or provision shall be severed from this Agreement without affecting the validity or enforceability of the remaining portions or provisions.

8.    <u>Binding Agreement</u>. This Agreement will not become binding and enforceable until the seven (7) calendar day revocation period in Paragraph 2(b) of this Agreement has lapsed.

**PLEASE READ VERY CAREFULLY.**
**THIS GENERAL RELEASE AGREEMENT INCLUDES A RELEASE OF ALL**
**KNOWN AND UNKNOWN EXISTING CLAIMS.**

**IN WITNESS WHEREOF,** the parties have voluntarily signed this General Release Agreement on the dates set forth herein.

_____
DEE BARRETT, Employee

GREATER HATBORO CHAMBER OF COMMERCE

Attest: _____     By: _____

Title: _____     Title: _____

                                     Date: _____

Page − 12 −

## EXHIBIT 1

### GENERAL RELEASE AND COVENANT NOT TO SUE

IN CONSIDERATION OF SEVERANCE PAY BY THE GREATER HATBORO CHAMBER OF COMMERCE, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledge, Dee Barrett ("Barrett"), on behalf of herself and her heirs, executors, administrators, agents, successors and assigns, hereby generally releases, remises, forever discharges, and covenants not to sue, the Greater Hatboro Chamber of Commerce ("Chamber"), and its present and former officers, directors, partners, subsidiaries, affiliates, associates, employees, agents, independent contractors, attorneys of counsel, representatives, attorneys, insurers, and their respective heirs, representatives, administrators, executors, agents, successors, and assigns (sometimes hereinafter referred to jointly as "Releasees"), both jointly and severally, of, from and for any and all manner of actions, causes of action, suits, debts, injuries, sums of money, controversies, agreements, damages, judgments, executions, claims, and demands whatsoever, in law, in equity, or otherwise, whether based on federal or state law, or city or county ordinance or otherwise, which Barrett now has, or ever has had, as of the date hereof, or at any time prior to the date hereof, including, but not limited to:

1.   Any and all claims, which were or could have been asserted by Barrett against Releasees with the United States Equal Employment Opportunity Commission (EEOC).

Page – 13 –

2.   Any and all claims or causes of action for employment discrimination.  Any and all claims or causes of action arising under, or any conduct which violates, the Age Discrimination in Employment Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, Title VII of the Civil Rights Act of 1964, the American With Disabilities Act, Executive Order 11246, the Rehabilitation Act of 1973, the Civil Rights Acts of 1870, 1872, 42 U.S.C. § 1981, 1983 or 1985, the Civil Rights Act of 1991, the Pennsylvania Human Relations Act or any provision of the Constitution of the United States, or the Employee Retirement Income Security Act of 1974, the Pennsylvania Insurance Code, the Fair Labor Standards Act, or any other statute, ordinance, rule or regulations of any state, federal, county or municipal government relating any aspect of the employment relationship.

3.   Any and all claims or causes of action for breach of contract or breach of personnel policies or employee handbooks, promissory estoppel, infliction of emotional distress, invasion of privacy, wrongful or retaliatory discharge, defamation, libel, slander, sexual harassment, any act contrary to the public policy of Pennsylvania, or any other violation of the common law of Pennsylvania or of any other state by Releasees.

4.   Any and all claims or causes of action for wages, vacation pay, or benefits, including, but not limited to, all claims arising under, or based on any conduct which violates any applicable labor code.

Page  – 14 –

5.    Any and all claims or causes of action arising out of any other alleged wrongful act of any Releasees while Barrett was employed by Chamber, or before or after her employment by Chamber.

6.    Any and all claims or causes of action against Releasees of any kind arising out of, or related to, Barrett's employment at Chamber.

7.    Any and all claims or causes of action arising under, or based on any conduct which violates, any other law, order, ordinance, regulation or enactment pertaining to employment, discrimination in employment, or wrongful termination, under any statutory law or the common law of the United States, any state thereof, or any subdivision of any such state, or of any governmental agency or otherwise.

8.    Any and all claims or causes of action which arise as a result of, or which are based on, any statement or statements made by Releasees about or referring to Barrett whether orally or in writing.

9.    Any and all claims for medical treatment or insurance benefits including, but not limited to, workers' compensation, short term disability or disability retirement.

10.   Any and all claims of any kind arising under, or based on, any violation by Releasees of any other provision of any constitution, statute, ordinance, order, regulation, enactment, or the common law, of the United States, any state thereof, or any subdivision of any state, or of any governmental agency or otherwise.

It is expressly understood and agreed that THIS IS A FULL AND FINAL GENERAL RELEASE AND COVENANT NOT TO SUE covering all known, unknown, anticipated, and unanticipated injuries, debts, causes of action, claims or damages which may have arisen or may arise, or may have been or may be sustained, in connection with any act or omission by Chamber or any other Releasee prior to the date of execution of this General Release and Covenant Not to Sue, any and all other claims, debts, causes of action or damages which Barrett now has or might have against Chamber or any other Releasee, whether arising out of, or relating in any way to, Barrett's employment or otherwise, or which Barrett ever will have as a result of any facts or circumstances existing as of the date of this GENERAL RELEASE AND COVENANT NOT TO SUE.

PLEASE READ CAREFULLY.  THIS GENERAL RELEASE AND COVENANT NOT TO SUE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. IT DOES NOT INCLUDE FUTURE CLAIMS.  YOUR SIGNATURE BELOW SIGNIFIES YOUR ACCEPTANCE OF THE TERMS OF THIS GENERAL RELEASE AND COVENANT NOT TO SUE.

Dated as of this _____ day of _____, 2000.

By:     _____
                DEE BARRETT, Employee

Page – 16 –