**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOLORES (DEE) BARRETT** | : | |
| | : | |
| **V.** | : | **CIVIL ACTION - LAW** |
| | : | |
| **THE GREATER HATBORO CHAMBER** | | **NO. 02 -cv-4421** |
| **OF COMMERCE, INC.; JOHN J.(BUD)** | : | |
| **AIKEN, AND MICKEY GLANTZ** | : | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S REQUEST FOR BINDING INSTRUCTIONS AND PROPOSED POINTS FOR JURY CHARGE

**1. Directed Verdict**

I instruct you that under the law and the Pennsylvania Constitution as it applies in this case, you must return a verdict in favor of Plaintiff Dolores (Dee) Barrett and against Defendants John (Bud) Aiken, Mickey Glantz, and The Greater Hatboro Chamber of Commerce.

**2. Directed Verdict**

I instruct you that based on the evidence presented in this case, you must return a verdict in favor of Plaintiff Dolores (Dee) Barrett and against Defendants John (Bud) Aiken and Mickey Glants, and The Greater Hatboro Chamber of Commerce.

Plaintiff attaches hereto her proposed Jury Instructions, reserving the right to supplement same at conclusion of the evidence in this case prior to submitting the case to the Jury.

Respectfully submitted,

_____
Anita F. Alberts Esquire ID #28086
The Atrium Suite 2 West
301 S. Main Street
Doylestown PA 18901
(215) 340-0700; FAX (215) 340-2747

**The "Reasonable Woman" Standard**

3. If you find from Dee Barrett's evidence at trial that she has proven (1) Dee Barrett suffered intentional discrimination at work because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination adversely affected he; (4) the discrimination would adversely or detrimentally affect a reasonable person of the same sex in that position; and (5) management knew or should have known of the discrimination and failed to correct it;

Then you must find that the Hatboro Chamber of Commerce permitted and maintained a hostile work environment as to Dee Barrett and must find in her favor and against Defendants on this issue.

<u>Andrews v. City of Philadelphia,</u> 895 F. 2d 1469 (3d Cir. 1990)

**The Pennsylvania Constitution Equal Rights Amendment**

4. Article I Section 28 of the Pennsylvania Constitution is known as the Pennsylvania Equal Rights Amendment, and it provides:

"EQUALITY OF RIGHTS UNDER THE LAW SHALL NOT BE DENIED OR ABRIDGED  IN THE COMMONWEALTH OF PENNSYLVANIA BECAUSE OF THE SEX OF THE INDIVIDUAL."

If you find that Dee Barrett's right to work without harassment was denied to her because of her sex, female, or that her job was taken from her because she refused to continue to put up with hostile sexual harassment, then you must find in her favor and against Defendants Hatboro Chamber of Commerce, John Aiken and Mickey Glantz.

Pennsylvania Constitution, Article I Section 28

## Right of Action Under the PERA

5. A private right of action is available for cases of gender discrimination under the Pennsylvania Equal Rights Amendment, the ERA.

Pfeiffer v. Marion Center Area School District, 917 F. 2d 779 ( 3d Cir. 1990)

Kemether v. Pennsylvania Interscholastic Athletic Assn. Inc., 15 F. Supp.2d 740 (E.D. Pa. 1998)

### State Constitutional Protection of Rights

6. The Pennsylvania Constitution provides more protection of individual rights than does the Federal Constitution; Pennsylvania's Declaration of Rights needs no affirmative legislation for enforcement of its Constitutional provisions.

<u>Spayd v. Ringing Rock Lodge,</u> 270 Pa. 67, 113 A. 70 (Pa. 1921)

<u>Erdman v. Mitchell,</u> 207 Pa. 79, 56 A. 327 (1903), cited in

<u>Jones v. City of Philadelphia,</u> 68 Pa. D. & C. 4th 47 (Phila. 2004)


**Sexual Harassment Defined**


7. If you find that Dee Barrett's workplace was permeated with harassment, ridicule, and insult such that it altered the conditions of her employment and created a hostile or abusive work environment, you must find in favor of Plaintiff and against all Defendants, for sexual harassment is not limited to economic discrimination.

Oncale v. Sundowner Offshore Services Inc., 523 U. S. 75, 118 S. Ct. 998, 1001 (1998)

Faragher v. City of Boca Raton, 524 U. S. 775, 118 S. Ct. 2275, 2283 (1998)

Harris v. Forklift Systems Inc., 510 U. S. 17, 21, 114 S. Ct. 376 (1993)


**Harassment Based on Sex**


8. In determining whether the harassment suffered by Dee Barrett was because of her sex, you need not find that the harassing conduct was motivated by sexual desire. Sexual harassment can include non-sexual actions directed to interfering with a person's work because of her gender. An example of this would be for a company such as Greater Hatboro Chamber of Commerce to take away Dee Barrett's job as Executive Director, and allow her harasser to replace her, John (Bud) Aiken, but to call him a CEO, after she had done the job of Executive Director for ten years.

<u>Oncale v. Sundowner Offshore Services Inc.,</u> 523 U. S. 75, 80 (1998);

<u>O'Rourke v. City of Providence</u>, 235 F. 3d 713 (1st Cir. 2001)


**Severity or Pervasiveness of Harassment**


9. If you find that Dee Barrett was subjected to a series of episodes of harassment over a period of time, you may find that she was subjected to pervasive harassment. The more severe an incident or incidents of harassment are, the less pervasive it needs to be. One episode of harassment, if sufficiently severely, can create a hostile environment. If you find Dee Barrett's testimony of the final incident when Bud Aiken exposed his erect penis to her and asked her if she wanted sex credible, you may find that there was a hostile work environment for Dee Barrett at the Hatboro Chamber of Commerce.

Durhan Life Ins Co. v. Evans, 166 F. 3d 139, 149 (3d Cir. 1999); West v. City of Philadelphia, 45 F. 3d 744, 756 (3d Cir. 1995); Harris v. Forklift Systems Inc., 510 U. S. 17, 117 S. Ct. 376 (1998)

**Willfully False Testimony**

10. If you decide that a witness has deliberately falsified his testimony on a significant point, you should take this into consideration in deciding whether or not to believe the rest of his testimony; and you may refuse to believe the rest of his testimony but are not required to do so.

Standard Pennsylvania Civil Jury Instruction 5.05

**Sexual Harassment Defined**

11. This case claims sexual harassment by maintenance of a sexually hostile atmosphere in the workplace, and also by "quid pro quo" harassment, in that John (Bud) Aiken, while he was Plaintiff's supervisor, and a member of the Chamber of Commerce Board of Directors, or President of the Board, expected Dee Barrett to show him "appreciation" in the form of sexual favors in return for his friendship and help in getting the Board to give her a raise, and if you find this conduct along with the verbal sexual harassment by Mickey Glantz, was sufficiently severe or pervasive to alter the conditions of Mrs. Barrett's employment, then you must find in favor of Plaintiff and you may award her money damages for the sexual harassment she endured during her 10 years of employment with the Chamber of Commerce.

Meritor Savings Bank FSB v. Vinson, 477 U. S. 57 (1986)

Hall v. Gus Construction Co., 842 F. 2d 1010 (8th Cir. 1998)


**Respondeat Superior**


12. If evidence shows that management-level persons (such as Mickey Glantz and Bud Aiken) had actual knowledge about the existence of a sexually hostile atmosphere, or participated in demeaning or harassing Dee Barrett themselves, and failed to take prompt and effective remedial action to stop the harassment when she complained, then you must find in favor of Dee Barrett and against the Hatboro Chamber of Commerce as well as against Mr. Aiken and Mr. Glantz, and you must hold the employer liable for hostile environment sexual harassment.

Burlington Industries v. Ellerth,  524 U. S. 742 (1998); Katz v. Dole,  709 F. 2d at 255 (4th Cir.

1983); Faragher v. City of Boca Raton, 524 U. S. 779, 799 (1998).


**Employer Knowledge**

13. When harassment takes place during work hours at the place of employment, and is

carried out by someone with the authority to supervise the victim or with authority to promote or

discipline her, the knowledge of the harassment is imputed to the employer.  This is particularly

true when the harasser was a supervisor and a member -- and at times President -- of the Boards

of Directors, such as John (Bud) Aiken and Mickey Glantz.  The Chamber of Commerce, the

employer, is STRICLY  LIABLE  for sexual harassment and constrictive discharge by upper

management.

Burlington Industries V. Ellerth, 524 U. S. 742 (1998);

Faragher v. City of Boca Raton, 118 S. Ct. 2196 (1998);

Meritor Savings Bank v. Vinson, 477 U. S. 57, 106 S. Ct. 2399 (1986);

Yates v. Avco Corp. 819 F. 2d 630 (6th Cir. 1987)

**Damages - General**

14. A person who is a victim of illegal discrimination is entitled to be restored to the position she would have been in but for the discrimination, and to receive compensation for her injuries, including all lost money and job benefits and emotional harm she suffered.  If you find that Mrs. Barrett was subjected to a sexually hostile work environment, or that she was forced to resign from her position at the Hatboro Chamber of Commerce, she is entitled to damages in this case.

Loeffler v. Frank, 486 U. S. 549, 558 (1998);

Maxfield v. Sinclair International Corp., 766 F. 2d 788 (3d Cir. 1985) cert. denied 106 S. Ct. 796 (1986).


### Gender Discrimination and Constructive Discharge


15. If you find from the evidence that Dee Barrett was treated differently in the terms and conditions of her employment than she would have been, had she been a man, for instance in her job loss by being replaced by her chief harasser, John (Bud) Aiken, and by the Chamber's refusal to provide health insurance benefits for her when Aiken received full benefits and a full time secretary when he took her job, and if you find that Dee Barrett was involuntarily discharged after rejecting a "choice" between working at half pay and involuntary discharge, then you must find in her favor and against all defendants for discrimination and discharge and you may award her money damages for the earnings she has lost and the emotional distress she suffered by reason of being unable to find comparable work in the community she loved, and having to relocate to New Jersey in order to find comparable employment.

Levendos v. Stern Entertainment Inc., 909 F. 2d 747 (3d Cir. 1990)

**Backpay - Mitigation**

16.  If you find that Dee Barrett was constructively discharged then you must determine the amount of back pay she is entitled to receive.  The purpose of back pay is to make the person whole for any wages and benefits lost as a result of the constructive discharge.  Back pay is the amount of money Mrs. Barrett would have earned from the date of discharge until she found replacement employment earning as much or more money, plus expenses incurred in her job search and relocation.  In calculating back pay and benefits to which Mrs. Barrett is entitled, absolute precision is not required and any uncertainties in determining the amount should be resolved against the employer.

<u>Goss v. Exxon Office Systems Co.,</u> 747 F. 2d 885, 889 (3d Cir. 1984);

<u>Booker v Taylor Milk Co.,</u> 64 F. 3d 860, 864 (3d Cir. 1995);

<u>Harris v. Forklift Systems Inc.,</u> 510 U. S. 17, 117 S. Ct. 376 (1993)

**Compensatory Damages**

17. If you find that Defendant(s) are liable to Plaintiff under Article 1 §28 of the Pennsylvania Constitution, the Equal Rights Amendment, Mrs. Barrett is entitled to recover damages in an amount which will reasonably compensate her for the loss and injury suffered as a result of Defendants' unlawful conduct. You may award compensation for the following: pain, suffering, physical or emotional distress, embarrassment and humiliation, mental anguish, and loss of enjoyment of life's pleasures, such as living and working among friends in the community she loved. You may consider the testimony of Dee Barrett, and of her family members in determining a fair allowance for these damages. Emotional harm may manifest itself in anxiety, stress, depression, marital strain, embarrassment, loss of respect in her community, emotional distress or loss of self-esteem.

In deciding the amount of the award you should take into account the nature, character, and seriousness of any emotional pain, suffering, mental anguish, or loss of enjoyment of life that Dee Barrett experienced. You must also consider the duration, as any award you make must cover the damages endured by her since the wrongdoing to the resent time, and into the future. No exact standard exists for determining the compensation to be awarded for these injuries.

Bolden v. SEPTA, 21 F. 3d 29 (3d Cir. 1994)

**Retaliation Claim**

18. Mrs. Barrett claims she was the victim of retaliation for refusing to continue to endure the verbal sexual abuse of Mickey Glantz and submit to the ongoing sexual requests culminating in Aiken's indecent exposure of his erect penis in the workplace. She made written complaints of harassment before the last, most serious and shocking incident, but fought back against Aiken by yelling epithets at him, throwing him out of the office and refusing to let him come back. After months had passed Aiken apologized to her, acknowledged his behavior and said she did not deserve to be mistreated as he had done; he pleaded to renew their friendship. While doing this and unbeknown to Mrs. Barrett, Aiken was scheming to take her job for himself, and Glantz was supporting Aiken's efforts. Their scheme worked, and violates laws against discrimination and the Pennsylvania Equal Rights Amendment in particular, which prohibits retaliation for engaging in protected activity to safeguard her right to work without mistreatment based on gender. Her internal complaints satisfy the requirement of engaging in protected activity. If you find Mrs. Barrett was discriminated against by the Hatboro Chamber of Commerce you may find she has established the first element of a claim of retaliation.

Aman v. Cort Furniture Rental Corp.,  85 F. 3d 1074, 1085 (3d Cir. 1996)


**Retaliation - Adverse Employment Action**

19.  Harassment can constitute an adverse employment action.  If you find Mrs. Barrett was the subject of unwelcome behavior that was sufficiently severe that it resulted in a materially adverse change in her employment -- in this case, being forced out of her job, when was then given to her harasser, Aiken, then Plaintiff has proven the second element of her claim of retaliation.

<u>Richardson v. New York State Dept. of Correctional Services,</u> 180 F. 3d 426, 446 (2d Cir. 1999);

<u>Morris v. Oldham County Fiscal Court,</u> 201 F. 3d 784 (6th Cir. 2000);

<u>White v. N.H. Dept. of Corrections,</u> 221 F. 3d 254 (1st Cir. 2000).

**Burden of Plaintiff**

20. Mrs. Barrett has the burden of establishing that it is more likely than not that retaliation for her complaints of gender discrimination or that her gender itself was a determining factor in the harassment and constructive discharge she was subjected to. It is for the jury to determine, based on all the ev9idence, that it is more likely than not that the harassment Mrs. Barrett was subjected to or Defendant's decision to remove her from her position was motivated by her complaints of gender discrimination. If you find that Mrs. Barrett was not harassed or constructively discharged in retaliation for her having complained and having rejecting Aiken's advances and Glantz's abusive behavior, then you must find in favor of the Hatboro Chamber of Commerce on her claim of retaliation.

Carey v. Mt. Desert Island Hospital,  1998 U. S. App. LEXIS 21290 (1st Cir. 1998).

**Wage Loss is not Part of Compensatory Damages**

21. Wage loss, including backpay, frontpay, and benefits, is not a component of compensatory damages, but is awarded in addition to compensatory damages awarded for emotional distress and pain and suffering.

Pollard v. E. I. DuPont de Nemours & Co.,  532 U. S. 843 (2001)

**Determinative Factor**

22. The question for you, the jury, is whether Mrs. Barrett's complaints of gender discrimination and harassment were a *determinative factor* in the harassment and removal of Mrs. Barrett from her job as executive director, to be replaced by her harasser, Aiken, done by her employer, the Hatboro Chamber of Commerce.  She need not prove her complaints of discrimination or harassment itself were the sole factor motivating the corporate Defendant. However, Mrs. Barrett must prove that she would not have been harassed or had her job taken from her if the fact that she complained of discrimination or harassment or that she is a woman had not been taken into account.

You are not able to decide whether you agree or disagree with the Hatboro Chamber of Commerce's actions.  You are to decide whether Mrs. Barrett's complaint of discrimination or her gender was a *determinative factor*  in the Chamber's actions against her.

Hook v. Ernst and Young, 28 F. 3d 366, 369-70 (3d Cir. 1994)

**Stereotypical Thinking**

23. Also, the law recognizes that unlawful discrimination sometimes is committed without having been planned, thought out, or acknowledged by the decision maker to himself or herself. That is, the law takes into account the effects of society's stereotypes on employers in ther decision making, and that biased decision making based upon those stereotypes can violate the law, even if the decision maker is unaware of bias in his thinking. This is because the law's purpose is to eradicate discrimination in all forms, regardless of the personal character of the individuals making discriminatory decisions.

Therefore, if you find from all the surrounding circumstances that Mickey Glantz, John Aiken and the Hatboro Chamber of Commerce treated Mrs. Barrett differently because of her complaint of discrimination or her gender, even if the Chamber of Commerce does not acknowledge or realize the motives of their officers, you must find in favor of Mrs. Barrett.

Bennett v. Veterans' Administration Medical Center, 721 F. Supp. 723 (E. D. Pa. 1989);

Easley v. Northern Shipping Co., 597 F. Supp. 954 (E. D. Pa. 1984);

Ostapowicz v. Johnson Bronze, 369 F. Supp. 522 (W. D. Pa., 1973) affirmed 541 F. 2d 394, cert. denied, 429 U. S. 1041 (1977); Walter v. Cowin Equpt. Co., 741 F. Supp. 1343 (N. D. Ala. 1972)

**Back Pay Not Reduced by Taxes**

24. You must not deduct from Mrs. Barrett's backpay the taxes she would have had to pay on her salary if she had not been terminated, since Mrs. Barrett will be required to pay taxes on the amount you award her for backpay. Otherwise she will have effectively been taxed twice on that back pay.

EEOC v. Kentucky State Police Dept., 80 F. 3d 1086, 1100 (6th Cir. 1996)

### Defendant's Burden to Prove Plaintiff Failed to Mitigate

25. The Hatboro Chamber of Commerce has the burden of proving that Mrs. Barrett did not minimize, or mitigate, her damages. In order to prove that Mrs. Barrett failed to mitigate her damages, the Chamber must establish: (1) that there were comparable and suitable positions available that she could have discovered and for which she was qualified; (2) that Mrs. Barrett failed to use reasonable diligence in seeking suck positions.

The Chamber of Commerce's burden is not satisfied by showing that there were further actions which Mrs. Barrett could have taken in pursuit of employment. Rather, the Chamber must show that the course of conduct Mrs. Barrett actually followed was so deficient as to constitute an unreasonable failure to seek employment.

Datley v. Societe Generale, 915 F. Supp. 1315, 1321 (S. D. NY 1996) aff'd in pertinent part, 108 F. 3d 451 (2d Cir. 1997).

**Punitive Damages**

26. If you fid that the conduct of one or all of the defendants was outrageous, you may award punitive damages, as well as any compensatory damages, in order to punish the defendant for his (or it's) outrageous conduct, and to deter the defendant and others from the commission of like actions and conduct against women employees in the future.

Restatement of Torts, §908(1).  <u>Chambers v. Montgomery,</u> 411 Pa. 339, 192 A. 2d 355 (1963);

Pa. Standard Instructions (Civ.) 14.00; <u>Kolstad v. American Dental Assn.,</u> 527 U. S. 526 (1999).

## Mendacity

27. Withholding of information, such as was done by Mickey Glantz, John Aiken and the

Chamber in the months before Mrs. Barrett was removed from her job, is evidence of mendacity,

an actor's state of mind to deceive and punish, and mendacity can support an award of punitive

damages.

St. Mary's Honor Center v. Hicks,  509 U. S. 502 (1993); Kolstad v. American Dental Assn.,

527 U. S. 526 (1999).


**Amount of Punitive Damages**

28. In determining the amount of punitive damages, should you decide to include this

item in your verdict, you may in your good discretion consider the nature of the defendant's

misconduct, the extent of its effect on the lives of Dolores Barrett and others, the likelihood of

future recurrence of such misconduct, the relationship between the parties, the relative wealth of

the defendant against whom you award punitive damages, and all circumstances surrounding the

misconduct.

DiTeodoro v. J. G. Durand International, 566 F. Supp. 273 (E. D. Pa. 1983).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES (DEE) BARRETT | : | |
| | : | |
| V. | : | CIVIL ACTION - LAW |
| | : | |
| THE GREATER HATBORO CHAMBER | | NO. 02 -cv-4421 |
| OF COMMERCE, INC.; JOHN J.(BUD) | : | |
| AIKEN, AND MICKEY GLANTZ | : | JURY TRIAL DEMANDED |

### CERTIFICATION OF SERVICE

ANITA F. ALBERTS ESQUIRE hereby certifies that a true and correct copy of Plaintiff's

Request for Binding Instructions and Proposed Jury Instructions was served to counsel for

defendants at the address below by First Class Mail, on the date written below.

> Sidney L. Gold Esquire
> Sidney L. Gold Associates
> Eleven Penn Center
> 1835 Market St. Suite 515
> Philadelphia PA 19103

_____(date)                    _____

                                                            Anita F. Alberts Esquire